1  Deborah C. Prosser (SBN 109856)
   Stephanie A. Hingle (SBN 199396)
2  KUTAK ROCK LLP
   515 South Figueroa Street
3  Suite 1240
   Los Angeles, CA  90071-3329
4  Telephone:  (213) 312-4000
   Facsimile:  (213) 312-4001
5  Email:  Deborah.Prosser@KutakRock.com
   Email:  Stephanie.Hingle@KutakRock.com
6
   Attorneys for Defendants
7  GE HEALTHCARE INC. and GENERAL
   ELECTRIC COMPANY
8
                **UNITED STATES DISTRICT COURT**
9
      **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**
10

11  LORRAINE ELLEN JOHNSON and    Case No.
    ROBERT GARY STONDELL,                    **CV  08      3441**
12  individually, and as Successors in
    Interest to the Estate of DORIS          **NOTICE OF REMOVAL OF ACTION**
13  LORRAINE STONDELL, Deceased   **UNDER 28 U.S.C. § 1441 (b)**
                                                           **(DIVERSITY)**
14                     Plaintiffs,

15          v.

16  BAYER HEALTHCARE               **[Jury Trial Demanded]**
    PHARMACEUTICALS, INC.;
17  BAYER HEALTHCARE LLC;          (San Francisco County Superior Court,
    BAYER SCHERING PHARMA          Case No. CGC08476085)
18  AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE
19  AS; GE HEALTHCARE, Inc.;
    MALLINCKRODT, INC.;
20  BRACCO DIAGNOSTICS, INC.;
    McKESSON CORPORATION;
21  MERRY X-RAY CHEMICAL
    CORPORATION; and DOES 1
22  through 35

23                     Defendants.

24

25      **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF**

26  **RECORD:**

27  ///

28  ///

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

4839-9330-5346 1

**PLEASE TAKE NOTICE** that Defendants GE Healthcare Inc. and General Electric Company (hereinafter "the Removing Defendants"), by their undersigned attorneys, hereby remove the above-entitled state court action, Case No.: CGC08476085, from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California, San Francisco Division, on the basis of diversity jurisdiction.  In support of this Notice of Removal, the Removing Defendants state as follows:

1.    **Introduction**

This case is hereby removed from state court to federal court because there is complete diversity between Plaintiffs Lorraine Ellen Johnson and Robert Gary Stondell ("Plaintiffs") and all properly named and served Defendants, Bayer HealthCare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer Schering Pharma AG; General Electric Company, GE Healthcare Inc., Mallinckrodt Inc., and Bracco Diagnostics, Inc. (the "Sponsor Defendants"). The Removing Defendants are informed and believe that GE Healthcare AS and Bayer Schering Pharma AG have not been served with the summons and complaint in this action, but both entities are diverse from Plaintiffs based on citizenship.  The Removing Defendants are informed and believe that McKesson Corporation and Merry X-Ray Chemical Corp. (the "Distributor Defendants") are nominal defendants which have been fraudulently joined, and thus, their citizenship is not considered for purposes of determining diversity jurisdiction.   All of the named and properly served defendants consent to the removal of this action. (See Declaration of Stephanie A. Hingle at ¶¶ 2-5.)   In addition, although their consent is not required, nominal defendants McKesson and Merry X-Ray consent to removal. (See Hingle Decl. at ¶ 6.)   Further, the amount in controversy exceeds $75,000.00.   Therefore, this Court has original jurisdiction under 28 U.S.C. § 1332.

2.    **The State Court Action**

On or about June 6, 2008, a civil action was commenced in the Superior

1    Court of the State of California in San Bernardino County entitled, *Lorraine Ellen*
2    *Johnson and Robert Gary Stondell, et al., v. Bayer Healthcare Pharmaceuticals,*
3    *Inc., et al.,* having been assigned Case No. CGC-08-476085 (San Francisco Cty.
4    Super. Ct. June 6, 2008.) The Complaint asserts eight (8) causes of action for strict
5    product liability – failure to warn, negligence, fraud: misrepresentation, fraud:
6    concealment suppression or omission of material facts; negligence
7    misrepresentation, violation of the Consumer Legal Remedies Act, wrongful death
8    and survival action.  (See Plaintiffs' Complaint attached hereto as Exhibit "A.")
9    Plaintiffs generally allege that Doris Lorraine Stondell contracted nephrogenic
10   systemic fibrosis ("NSF") as a result of exposure to Gadolinium-based contrast
11   agents manufactured by one or more of the named Sponsor Defendants. (See *Id.*
12   ¶¶ 42-62.)

13        **3.    Pleading and Process**

14        As required by 28 U.S.C. § 1446(a), attached are copies of all state court
15   process, pleadings and orders served upon McKesson in the removed case. (See
16   Exhibit "A.")

17        **4.    The Removal is Timely**

18        The GE Defendants are informed and believe that the first date upon which
19   any named defendant was served with a copy of said Complaint in the removed
20   case was June 16, 2008, when GE Healthcare Inc. was served with a copy of the
21   Summons and Complaint through its registered agent for service of process, CT
22   Corporation System.  (See Service of Process Transmittal, attached as Exhibit "A.")
23   Accordingly, this Notice of Removal is filed within 30 days of service upon any
24   defendant and, therefore, is timely under 28 U.S.C. § 1446(b).  (See *United*
25   *Computer Sys. v. AT&T Corp.,* 298 F3d 756, 762 (9th Cir. 2002).)

26        **5.    Basis for Removal – Diversity Jurisdiction**

27        This is a civil action that falls within the Court's original jurisdiction under
28   28 U.S.C. § 1332 (diversity of citizenship), and is one which may be removed to

1  this Court by the Removing Defendants pursuant to the provisions of 28 U.S.C. §

2  1441 in that it is a civil action between citizens of different states and the matter in

3  controversy exceeds the sum of $75,000, exclusive of interest and costs.

4      **6.    Amount in Controversy**

5          a.    The amount in controversy for this matter exceeds $75,000,

6  exclusive of interest and costs.  (See 28 U.S.C. § 1332.)  Where a plaintiff's

7  complaint does not specify the amount of damages being sought, whether or not

8  the amount in controversy exceeds jurisdictional limits can be ascertained from the

9  complaint.  (See *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th

10  Cir. 1997).  This burden can easily be met if it is facially apparent from the

11  allegations in the complaint that plaintiff's claims exceed $75,000.00.  (See

12  *Kenneth Rothchild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993 (C.D.

13  Cal. 2002); see *Campbell v. State Farm Mut. Auto Ins. Co.*, No. CV87-7759 JMI

14  (GHKx), 1988 U.S. Dist. LEXIS 19496, 2-3 (C.D. Cal. 1988) ("For removal

15  purposes, the amount in controversy is to be determined by the allegations in the

16  complaint or where they are not dispositive, by allegations in the petition for

17  removal"); *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511 (2nd Cir.

18  1957).)

19          b.    Based on a fair reading of the allegations of damages involved,

20  and on the experience of the undersigned counsel and the Removing Defendants in

21  products liability and toxic tort cases, the amount in controversy exceeds the sum of

22  $75,000.00  (See *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883-884 (5th Cir.

23  2000) (ruling in a slip-and-fall case that alleged damages for "medical expenses,

24  physical pain and suffering, mental anguish and suffering, loss of enjoyment of life,

25  loss of wages and earning capacity, and permanent disability and disfigurement"

26  met the jurisdictional threshold); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298

27  (5th Cir. 1999) (removal proper where it is facially apparent that amount in

28  controversy exceeds $75,000); *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d

1213, 1215 (8th Cir. 1992) (punitive damages are properly considered in calculating the amount in controversy).)

        c.     Although Plaintiffs do not allege a specific damages figure in the Complaint, they do allege that they are entitled to medical expenses, economic damages, compensatory damages including pain, suffering, emotional distress, loss of enjoyment of life and other non-economic damages, punitive damages, restitution, loss of consortium, attorneys fees and expenses, all according to proof. (See *Complaint* Prayer)   All of these claims for relief are asserted in each of the causes of action alleged by Plaintiffs. (See *Id.*)  A fair reading of these allegations reveals that the damage claims involved are substantial and exceed $75,000.00, exclusive of interest and costs, and that this case meets the jurisdictional requirement.  (See *Richman v. Zimmer, Inc.*, 644 F. Supp. 540, 542 (S.D. Fla. 1986) ("Where a fair reading of the complaint in a state suit based on serious personal injuries places the defendant on notice as to the substantial amount of damages involved, the defendant should be aware that the claim is removable even though the plaintiff merely alleges state court's minimum jurisdictional amount.")

      **7.**    **Diversity Between Plaintiff And Defendants**

The requisite complete diversity of citizenship exists between Plaintiffs and all properly named and served Defendants. (See 28 U.S.C. §1332.)

        a.     The Removing Defendants are informed and believe that Plaintiffs are now and were at the time of filing of the Complaint residents of the state of California.  (Complaint at ¶ 1.)  Plaintiffs are therefore California citizens for purposes of federal diversity jurisdiction.  (See 28 U.S.C. § 1332(a); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).)

        b.     The Removing Defendants are informed and believe that Bayer HealthCare Pharmaceuticals, Inc. (Sponsor Defendant) is a Delaware business entity with its principal place of business in New Jersey.  (Complaint at ¶ 7.)  Bayer HealthCare Pharmaceuticals, Inc. was a citizen of the States of Delaware and New

Jersey at the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

        c.     The Removing Defendants are informed and believe that Bayer HealthCare LLC (Sponsor Defendant) is now and was a Delaware business entity with its principal place of business in New York. (Complaint ¶ 4.) Bayer HealthCare LLC was a citizen of the States of Delaware and New York at the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

        d.     The Removing Defendants are informed and believe that Bayer Schering Pharma AG (Sponsor Defendant) is a foreign company domiciled in Germany. (Complaint ¶ 6.) Bayer Schering Pharma was a citizen of Germany at the time of filing of the complaint for purpose of federal diversity jurisdiction.

        e.     General Electric Company (Sponsor Defendant) is now and was a New York business entity with its principal place of business in the State of Connecticut. (Complaint at ¶ 11.) General Electric Company was a citizen of the States of New York and Connecticut at the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

        f.     GE Healthcare Inc. (Sponsor Defendant) is now and was a Delaware corporation with its principal place of business in the State of New Jersey. (Complaint at ¶ 14.) GE Healthcare Inc. was a citizen of the States of Delaware and New Jersey at the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

        g.     GE Healthcare AS (Sponsor Defendant) is now and was a foreign company domiciled in Norway. (Complaint at ¶ 15.) GE Healthcare AS was a citizen of Norway at the time of the filing of the Complaint for purposes of federal diversity jurisdiction.

        h.     The Removing Defendants are informed and believe that Defendant Mallinckrodt Inc. (Sponsor Defendant) is now and was a Delaware entity with its principal place of business in Missouri. (Complaint at ¶ 19.)

1  Mallinckrodt Inc. was a citizen of the States of Delaware and Missouri at the time

2  of the filing of the Complaint for purposes of federal diversity jurisdiction.

3       i.    The Removing Defendants are informed and believe that

4  Defendant Bracco Diagnostics, Inc. (Sponsor Defendant) is now and was a

5  Delaware entity with its principal place of business in New Jersey (Complaint at ¶

6  22.)  Bracco Diagnostics, Inc. was a citizen of the States of Delaware and New

7  Jersey at the time of the filing of the Complaint for purposes of federal diversity

8  jurisdiction.

9       j.    The Removing Defendants are informed and believe that

10  McKesson Corporation (Distributor and Nominal Defendant) is now and was a

11  Delaware corporation with its principal place of business in the State of California.

12  (Complaint at ¶ 30.)  McKesson, however, is fraudulently joined, and therefore, its

13  citizenship is disregarded for purposes of determining federal diversity jurisdiction.

14  (See *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).)  (See

15  Paragraphs 9(a) through 9(e), *infra*.)

16       k.    The Removing Defendants are informed and believe that

17  Defendant Merry X-Ray Chemical Corporation (Distributor and Nominal

18  Defendant) is now and was a California Corporation with its principal place of

19  business in the State of California.  (Complaint at ¶ 34.)  Merry X-Ray, however, is

20  fraudulently joined, and therefore, its citizenship is disregarded for purposes of

21  determining federal diversity jurisdiction. (See *Morris v. Princess Cruises, Inc.*,

22  236 F.3d at 1067.)  (See Paragraphs 9(a) through 9(e), *infra*.)

23       **8.    Fraudulent Joinder Standard for Non-Diverse Defendants**

24       a.    In determining whether there is federal jurisdiction, a federal

25  court normally will examine the plaintiff's case and not the defendant's pleadings.

26  However, when considering whether there is a fraudulent joinder, the court "will go

27  somewhat further" because "the defendant seeking removal to the federal court is

28  entitled to present the facts showing the joinder to be fraudulent." (*Ritchey v.*

1     *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (internal citations omitted).)

2     A federal court may disregard a non-diverse defendant for the purposes of

3     determining diversity if that federal court determines that the non-diverse

4     defendant's joinder is "fraudulent" or a "sham" because no cause of action has been

5     stated against that defendant under state law. (See *Morris v. Princess Cruises, Inc.*,

6     236 F.3d at 1067.)

7           b.     Fraudulent joinder exists "when there is no possibility of

8     recovery against a resident defendant 'according to the settled rules of the state'."

9     (*TPS Utilicom Services, Inc.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002).) While

10     the test for fraudulent joinder resembles a Rule 12(b)(6) analysis in that the federal

11     court accepts non-conclusory allegations as true, the Court's inquiry is broader than

12     Rule 12(b)(6). (*Id.* )

13           c.     A defendant is fraudulently joined where there is no *reasonable*

14     *basis in fact* for a claim against it. (See *Maffei v. Allstate Ins. Co.*, 412 F. Supp. 2d

15     1049, 1053 (E.D. Cal. 2006) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S.

16     92, 97 (1921) (joinder was fraudulent where defendant had 'no real connection [to]

17     the controversy' because the allegations against the defendant were 'without any

18     reasonable basis in fact').)

19           **9.**     **Fraudulent Joinder of Distributor Defendant**

20           a.     The citizenship of distributor defendants McKesson and Merry

21     X-Ray should be disregarded for the purposes of determining jurisdiction under 28

22     U.S.C. § 1332 and 28 U.S.C. § 1441(b), because there is no reasonable basis in fact

23     for establishing liability against the distributor defendant (and thus, the distributor

24     defendant was fraudulently joined.) The presence of a sham or nominal party will

25     not defeat removal on diversity grounds. (See *Strotek Corp. v. Air Transport*

26     *Assoc.*, 300 F.3d at 1131.)

27           b.     Under California law, Plaintiffs' wrongful death action against

28     the Distributor Defendants is governed by a two-year statute of limitations which

began to run from the date of injury.  (See Cal. Code of Civil Procedure § 335.1; see also *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.)   As stated above, Plaintiffs' Complaint asserts that Decedent Doris Lorraine Stondell's death was the result of the wrongful acts of all defendants when she allegedly received multiple injections of unidentified gadolinium-based contrast agents between the months of August and September 2005, was diagnosed with NSF in November 2005, and died allegedly as a result on December 27, 2005.  (See Complaint at ¶ 42.)  Thus, the running of the statute of limitations is apparent on the face of the Complaint.  (See *Ritchey v. Upjohn Drug Co.*, 139 F.3d at 1320.)

      c.    In *Ritchey*, plaintiff argued that complete diversity did not exist due to claims brought against non-diverse defendants in a pharmaceutical product liability action related to plaintiff's use of the drug, Halcion.  (*Id.* at 1315.)  Plaintiff brought the action more than four years after ingesting the drug and the district court ruled that the claims against the defendants was barred by the California statute of limitations.  (See *Id.*)

      d.    Similarly, Plaintiffs here brought the instant action 2 years and 9 months after Mrs. Stondell was allegedly last injected with any gadolinium-based contrast agent and more than 2 ½ years after her diagnosis of NSF and her death.  (See Complaint ¶ 42.)  Under these facts, the Complaint is subject to demurrer for failure to state a cause of action.   (See *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4[th] 816, 825; *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 917.)

      e.    Based on the Complaint allegations, Plaintiffs' claims against McKesson and Merry X-Ray are time-barred and there is no reasonable basis in fact for establishing liability against the Distributor Defendant. (See *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (removal proper where non-diverse defendants in pharmaceutical product liability action deemed fraudulently joined due to running of the statute of limitations); see also Paragraphs 8a through 8c, *supra*.).

///

10. **Consent and Joinder of Named Defendants**

The Removing Defendants are not required to gain the consent of any defendant who has not been properly named or served. (See *Salveson v. W. States Bankcard Ass'n,* 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that the Ninth Circuit rule is that "a party not served need not be joined" in a notice of removal); see also *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 (9th Cir. 1988).) However, nominal defendants McKesson and Merry X-Ray have consented to the removal of this action. (See Hingle Decl. at ¶ 6.) Similarly, the Removing Defendants are informed and believe that GE Healthcare AS, if properly served, would consent to removal of this action. (See Hingle Decl. at ¶ 7.)

11. **Notice Given**

Pursuant to 28 U.S.C. § 1446(d), the Removing Defendants are filing this Notice of Removal concurrently with the State Court in which the action is currently pending. In addition, Notice of Filing Notice of Removal was served concurrently on Plaintiffs' counsel.

12. **Venue and Notice of Related Case**

The United States District Court of the Northern District of California, San Francisco Division, embraces the county in which the State Court action is now pending and, therefore, this Court is a proper venue for this action. (28 U.S.C. §§ 84(c)(1), 1441(a).)

13. **Additional Discovery, Briefing, and Argument**

If any question arises as to the propriety of this removal, the Removing Defendants request the opportunity to conduct discovery or brief any disputed issues and to present oral argument in support of their position that this case is properly removable.

14. **Non-Waiver of Defenses**

Nothing in this Notice of Removal or related documents shall be interpreted as a waiver or relinquishment of the Removing Defendants' right to assert any

defense or affirmative matter in this proceeding, including without limitation, a motion for severance in the event that Doe Defendants are subsequently named and served.

**15.    <u>Conclusion</u>**

Accordingly, the Removing Defendants respectfully request that this action now pending in the San Francisco County Superior Court be removed to this Court and that this action be placed upon the docket of this Court for further proceedings as though originally instituted in this Court.

Dated:        July 16, 2008                    KUTAK ROCK LLP


                                    By: _Stephanie Hingle_____
                                        Deborah C. Prosser
                                        Stephanie A. Hingle
                                        Attorneys for Defendants
                                        GE HEALTHCARE INC. and
                                        GENERAL ELECTRIC COMPANY

# EXHIBT "A"

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
06/16/2008
CT Log Number 513534461

| | |
|---|---|
| **TO:** | Karen Selavka<br>General Electric Company<br>PO # 111-003702, Corp Legal Dept<br>3135 Easton Tnpk<br>Fairfield, CT 06431 |
| **RE:** | **Process Served in California** |
| **FOR:** | General Electric Company (Domestic State: NY) |

JUN 1 9 2008

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lorraine Ellen Johnson and Robert Gary Stondell, individually, an as Successors in Interest to the estate of Doris Lorraine Stondell, Deceased, Pltfs. vs. Bayer Healthcare Pharmaceuticals, Inc., et al. including General Electric Company, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Affidavit, Declaration, Exhibit(s), Attachment(s), Cover Sheet, Notice to Plaintiff |
| **COURT/AGENCY:** | San Francisco County- San Francisco, Superior Court, CA<br>Case # CGC08476085 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Wrongful Death - Failure to Warn - Gadolinium-based contrast agents |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/16/2008 at 11:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // 11/07/08 at 9:00 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Lawrence J. Gornick<br>Levin Simes Kaiser & Gornichk<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA 94104<br>415 646 7160 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 791087723819 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / WM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exh. A
13

# SUMMONS
## (CITACION JUDICIAL)

*6/16*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Bayer Healthcare Pharmaceuticals, Inc.; Bayer
Healthcare LLC; Bayer Schering Pharma AG; General
Electric Company; GE Healthcare AS; GE Healthcare,
Inc.; Mallinckrodt, Inc.; Bracco Diagnostics, Inc.;
McKesson Corporation; Merry X-Ray Chemical Corp.; and
Does 1 through 35

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Lorraine Ellen Johnson and Robert Gary Stondell,
individually, and as Successors in Interest to the
Estate of Doris Lorraine Stondell, Deceased

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.   Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.   Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
  Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court
400 McAllister Street

San Francisco, CA 94102

CASE NUMBER
*(Número del Caso):*
**CGC-08-476085**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence J. Gornick (SBN 136290)
Levin Simes Kaiser & Gornick                    (415)646-7160      (415) 981-1270
44 Montgomery Street, 36th Floor
San Francisco, CA 94104

DATE:
*(Fecha)*        **JUN 0 6 2008**    **GORDON PARK-LI**    Clerk, by _____   **D. STERRE**  , Deputy
                                       *(Secretario)*                                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* GENERAL ELECTRIC COMPANY

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [X] other *(specify):* A NEW YORK BUSINESS ENTITY FORM UNKNOWN
4. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**


Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

Exh. A
14

ENDORSED
**F I L E D**
Superior Court of California
County of San Francisco

JUN 0 6 2008

**GORDON PARK-LI, Clerk**
BY: _____DEBORAH STEPPE_____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

NOV 0 7 2008 - 9 00 AM

DEPARTMENT 212

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
3  **LEVIN SIMES KAISER & GORNICK LLP**
   44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
7  Attorneys for Plaintiffs

8            **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                            **COUNTY OF SAN FRANCISCO**

10 LORRAINE ELLEN JOHNSON and ROBERT         Case No: **CGC-08-476085**
   GARY STONDELL, individually, and as
11 Successors in Interest to the Estate of DORIS
   LORRAINE STONDELL, Deceased,
12                                             **COMPLAINT FOR DAMAGES DUE TO:**
13              Plaintiffs,

      vs.
14                                             1) **STRICT LIABILITY: FAILURE TO
                                                  WARN (All Defendants);**
   BAYER HEALTHCARE                           2) **NEGLIGENCE (All Defendants);**
15 PHARMACEUTICALS, INC.; BAYER              3) **FRAUD: MISREPRESENTATION
   HEALTHCARE LLC; BAYER SCHERING               (Manufacturing Defendants);**
16 PHARMA AG; GENERAL ELECTRIC               4) **FRAUD: CONCEALMENT,
   COMPANY; GE HEALTHCARE AS; GE                SUPPRESSION OR OMISSION OF
17 HEALTHCARE, INC.; MALLINCKRODT,             MATERIAL FACTS (Manufacturing
   INC.; BRACCO DIAGNOSTICS, INC.;             Defendants);**
18 McKESSON CORPORATION; MERRY X-            5) **NEGLIGENT
   RAY CHEMICAL CORP.; and DOES 1              MISREPRESENTATION
19 through 35                                   (Manufacturing Defendants);**
                                             6) **VIOLATION OF CONSUMERS
20              Defendants.                      LEGAL REMEDIES ACT (All
                                                Defendants);**
21                                           7) **WRONGFUL DEATH (All
                                                defendants); and**
22                                           8) **SURVIVAL ACTION (All Defendants)**

23

24      Plaintiffs, Lorraine Ellen Johnson and Robert Gary Stondell, (hereinafter "Plaintiffs"),

25 surviving children and successors in Interest to the Estate of Doris Lorraine Stondell, (hereinafter

26 "Decedent") allege as follows:

27 ///

28 ///

                                          1
                    COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
15

## PARTIES

*Plaintiffs*

1.    Lorraine Ellen Johnson and Robert Gary Stondell, are residents of the State of California.  They are the sole heirs and executors of the estate of Doris Lorraine Stondell, who died on December 27, 2005.  Plaintiffs are the decedent's successors in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the decedent's interest.

2.    Decedent Doris Lorraine Stondell was diagnosed with and died of nephrogenic systemic fibrosis ("NSF").  NSF is an incurable, painful and deadly disease.  Decedent contracted NSF as a result of receiving MRIs and MRAs using intravenous injections of gadolinium-based contrast agents.

*Manufacturing Defendants*

3.    Defendants Bayer Schering Pharma AG, Bayer HealthCare Pharmaceuticals, Inc. and Bayer Healthcare LLC (collectively referred to as "Bayer") manufacture, market and sell Magnevist, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

4.    Defendant Bayer HealthCare LLC, a division of Bayer AG, is a Delaware business entity with its principal place of business in New York.

5.    Bayer HealthCare LLC is duly authorized to conduct business in the State of California and does business in San Francisco County.

6.    Bayer Schering Pharma AG is a foreign company domiciled in Germany.  Bayer Schering Pharma AG is engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing Magnevist into interstate commerce, either directly or indirectly through third parties or related entities.

7.    Defendant Bayer HealthCare Pharmaceuticals, Inc. is a Delaware business entity with its principal place of business in New Jersey.  Defendant Bayer HealthCare Pharmaceuticals, Inc. is the U.S.-based pharmaceuticals unit of Bayer Healthcare LLC.

8.    Bayer HealthCare Pharmaceuticals, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

9.    At all times relevant to this complaint, Bayer advertised, promoted, marketed, distributed and sold Magnevist in San Francisco County.

10.    Defendants General Electric Company, GE Healthcare, Inc. and GE Healthcare AS (collectively referred to as "GE") manufacture and sell Omniscan, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

11.    Defendant General Electric Company is a New York business entity with its principal place of business in Connecticut.

12.    General Electric Company is duly authorized to conduct business in the State of California and does business in San Francisco County.

13.    Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of business in New Jersey.

14.    GE Healthcare, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

15.    GE Healthcare AS is a foreign company domiciled in Norway.  GE Healthcare AS is engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing Omniscan into interstate commerce, either directly or indirectly through third parties or related entities.

16.    At all times relevant to this complaint, GE advertised, promoted, marketed, distributed and sold Omniscan and its MRI and MRA machines in San Francisco County.

17.    Defendant Mallinckrodt, Inc. manufactures, distributes and sells OptiMARK, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

18.    Defendant Mallinckrodt, Inc. is a Delaware corporation with its principal place of business in Missouri.

19.    Mallinckrodt, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

20.    At all times relevant to this complaint, Mallinckrodt advertised, promoted, marketed, distributed and sold OptiMARK in San Francisco County.

21.    Defendant Bracco Diagnostics, Inc. ("Bracco") manufactures, sells and distributes

- 3 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  MultiHance and ProHance, gadolinium-based contrast agents that, on information and belief, were

2  injected into Decedent.

3        22.    Bracco Diagnostics, Inc. is a Delaware corporation with its principal place of business

4  in New Jersey.

5        23.    Bracco Diagnostics, Inc. is duly authorized to conduct business in the State of

6  California and does business in San Francisco County.

7        24.    At all times relevant to this complaint, Bracco advertised, promoted, marketed,

8  distributed and sold MultiHance and ProHance in San Francisco County.

9        25.    The true names and capacities of those Defendants designated as Does 1-15 are

10 unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 1-15 manufactured

11 gadolinium-based contrast agents that were injected into Decedent and/or manufactured MRI and

12 MRA machines with which MRIs and/or MRAs were performed on Decedent using gadolinium-based

13 contrast agents.  Plaintiffs allege on information and belief that each of these fictitiously named

14 defendants bears legal responsibility for the events and damages set forth in this complaint.

15       26.    Plaintiffs allege on information and belief that Does 1-15 were and are companies

16 authorized to do and doing business in the State of California and have regularly conducted business in

17 the County of San Francisco, State of California.

18       27.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named

19 Defendant when they have been ascertained.

20       28.    The Bayer, GE, Mallinckrodt and Bracco Defendants, along with Does 1-15, are

21 collectively referred to as the Manufacturing Defendants.

22 *Distributor Defendants*

23       29.    Defendant McKesson Corporation distributes Omniscan and, on information and belief,

24 other gadolinium-based contrast agents.  Plaintiffs allege on information and belief that McKesson

25 distributed the Omniscan and/or other gadolinium-based contrast agents that were injected into

26 Decedent.

27       30.    Defendant McKesson Corporation is a Delaware corporation with its principal place of

28 business at One Post Street, San Francisco, California.

- 4 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
18

1    31.    McKesson Corporation is duly authorized to conduct business in the State of California

2    and does business in San Francisco County.

3    32.    At all times relevant to this complaint, on information and belief, McKesson sold

4    Omniscan and/or other gadolinium-based contrast agents in San Francisco County.

5    33.    Defendant Merry X-Ray Chemical Corporation distributes Magnevist and/or other

6    gadolinium-based contrast agents.  Plaintiffs allege on information and belief that Merry X-Ray

7    distributed the Magnevist and/or other gadolinium-based contrast agents that were injected into

8    Decedent.

9    34.    Defendant Merry X-Ray Chemical Corporation is a California corporation with its

10    principal place of business at 4444 Viewridge Avenue, San Diego, California.

11    35.    Merry X-Ray Chemical Corporation is duly authorized to conduct business in the State

12    of California and does business in San Francisco County.

13    36.    At all times relevant to this complaint, Merry X-Ray sold Magnevist and/or other

14    gadolinium-based contrast agents in San Francisco County.

15    37.    The true names and capacities of those Defendants designated as Does 16-35 are

16    unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 16-35 distributed

17    gadolinium-based contrast agents that were injected into Decedent.  Plaintiffs allege on information

18    and belief that each of these fictitiously named Defendants bears legal responsibility for the events and

19    damages set forth in this Complaint.

20    38.    Plaintiffs allege on information and belief that Does 16-35 were and are companies

21    authorized to do and doing business in the State of California and have regularly conducted business in

22    the County of San Francisco, State of California.

23    39.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named

24    defendant when they have been ascertained.

25    40.    McKesson and Merry X-Ray, along with Does 16-35, are collectively referred to as the

26    Distributor Defendants.

27    41.    The Manufacturing Defendants and the Distributor Defendants are collectively referred

28    to as Defendants.

- 5 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

**FACTS**

42.    Decedent was diagnosed with chronic renal insufficiency and end stage renal disease. Between the months of August and September of 2005, she was subjected to multiple injections of gadolinium-based contrast agents for MRI and MRA procedures. Shortly thereafter, she began to suffer from symptoms of Nephrogenic Systemic Fibrosis ("NSF"), also known as Nephrogenic Fibrosing Dermopathy ("NFD"), and was officially diagnosed in or around the end of November 2005. The disease progressed rapidly until it caused her death approximately one month later on December 27, 2005.

43.    NSF is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement. NSF also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature, and that can inhibit their ability to function properly and may lead to death. NSF is a progressive disease for which there is no known cure.

44.    NSF is a man-made disease. It only occurs in patients who have received a gadolinium-based contrast agent for an MRI or an MRA.

45.    Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human body. The only known route for gadolinium to enter the human body is injection of a gadolinium-based contrast agent.

46.    Because gadolinium is toxic, it has to be coated to keep it from coming in contact with human tissue when used in connection with MRIs or MRAs. This coating process is called chelation.

47.    Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast agents are not safe if the chelate separates from the gadolinium, which is what happens over time if kidneys are not functioning properly. Individuals with impaired kidney function risk dechelation and cannot efficiently or quickly eliminate gadolinium from their bodies. The Manufacturing Defendants

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  never tested the safety of their gadolinium-based contrast agents in individuals with kidney

2  impairment.

3      48.    On information and belief, the gadolinium-based contrast agents injected into Decedent

4  were manufactured by the Manufacturing Defendants and distributed by the Distributor Defendants.

5      49.    In pre-clinical studies during which gadolinium-based contrast agents were injected into

6  laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the

7  kidneys and other body organs occurred.

8      50.    During the years that Defendants have manufactured, marketed, distributed, sold and

9  administered gadolinium-based contrast agents, there have been numerous case reports, studies,

10  assessments, papers, and other clinical data that have described and/or demonstrated NSF in

11  connection with the use of gadolinium-based contrast agents.

12      51.    Decedent received MRIs and/or MRAs utilizing gadolinium-based contrast agents.

13      52.    Decedent had impaired kidney function at the time she received her first injection of

14  gadolinium-based contrast agent and continued to have impaired kidney function at the time she

15  received each subsequent injection of gadolinium-based contrast agent.

16      53.    During the time period when Decedent received injections of the Manufacturing

17  Defendants' gadolinium-based contrast agents, Defendants knew or should have known that the use of

18  gadolinium-based contrast agents created a risk of serious bodily injury and death in patients with

19  impaired kidney function.

20      54.    Defendants failed to warn Decedent and her healthcare providers about the serious

21  health risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there

22  were safer alternatives.

23      55.    As a direct and proximate result of receiving injections of gadolinium-based contrast

24  agents manufactured, distributed, marketed and/or sold by Defendants, Decedent developed NSF.

25      56.    Defendants have repeatedly and consistently failed to advise consumers and/or their

26  healthcare providers of the causal relationship between gadolinium-based contrast agents and NSF in

27  patients with renal insufficiency. Defendants knew or should have known of the risk of NSF posed by

28  gadolinium-based contrast agents to individuals with impaired kidney function years before they

- 7 -

finally issued warnings.

57.    It was not until September 2007 that Bayer, GE, Bracco and Mallinckrodt finally sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-based contrast agents.

58.    Had Decedent and/or her healthcare providers been warned about the risks associated with gadolinium-based contrast agents, Decedent would not have been administered gadolinium-based contrast agents, would not have been afflicted with NSF, and would not have died.

59.    As a direct and proximate result of Decedent being administered gadolinium-based contrast agents, she suffered severe physical injury and pain and suffering, including, but not limited to, the effects of NSF which progressively worsened until it caused her death.

60.    As a direct and proximate result of being administered gadolinium-based contrast agents, Decedent suffered significant mental anguish and emotional distress until her death.

61.    As a direct and proximate result of being administered gadolinium-based contrast agents, Decedent incurred medical expenses and other economic damages.

62.    As a direct and proximate result of decedent's death, Plaintiffs, as the executors and successors in interest of the estate, have suffered a permanent and substantial loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support and training and guidance as well as pecuniary loss, monies, income, earnings and services and the deprivation of such pecuniary benefits in the future as would have been occasioned by the continued life of the Decedent. Plaintiffs also incurred expenses of Decedent's illness, funeral and burial expenses.

## DISCOVERY RULE & FRAUDULENT CONCEALMENT

63.    The discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against all Defendants. The nature of Decedent's injuries and damages, and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiffs, until a time less than two years before the filing of this Complaint. It was not until

September 2007 that Bayer, GE, Bracco and Mallinckrodt finally sent letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-based contrast agents. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

64.    Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiffs the nature of Decedent's injury and the connection between the injury and all Defendants' tortious conduct.

## FIRST CAUSE OF ACTION
### (Against All Defendants)
## STRICT LIABILITY: FAILURE TO WARN

65.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

66.    Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or should have known that their products created significant risks of serious bodily harm and death to consumers. Defendants failed to adequately warn consumers and their healthcare providers of such risks.

67.    Because of Defendants' failure to provide adequate warnings with their products, Decedent was injected with gadolinium-based contrast agents which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Those gadolinium-based contrast agents were the legal cause of Decedent's serious physical injuries, harm, damages, economic loss, and death, and of Plaintiffs' damages as set forth below.

## SECOND CAUSE OF ACTION
### (Against All Defendants)
## NEGLIGENCE

68.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

69.    Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of gadolinium-based contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents.

- 9 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

1   In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily

2   harm and adverse events.

3       70.    Defendants failed to exercise reasonable care in the design, formulation, manufacture,

4   sale, testing, marketing, or distribution of gadolinium-based contrast agents and the MRI and MRA

5   machines designed to be used in conjunction with gadolinium-based contrast agents in that they knew

6   or should have known that the products could cause significant bodily harm or death and were not safe

7   for use by certain types of consumers.

8       71.    Defendants failed to exercise ordinary care in the labeling of gadolinium-based contrast

9   agents and the labeling of MRI and MRA machines designed to be used in conjunction with

10  gadolinium-based contrast agents and failed to issue to consumers and their health care providers

11  adequate warnings concerning the risks of serious bodily injury or death due to the use of gadolinium-

12  based contrast agents and the MRI and MRA machines designed to be used in conjunction with

13  gadolinium-based contrast agents.

14      72.    Despite the fact that Defendants knew or should have known that gadolinium-based

15  contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-

16  based contrast agents posed a serious risk of bodily harm to consumers, Manufacturing and Distributor

17  Defendants unreasonably continued to manufacture and market gadolinium-based contrast agents and

18  the MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast

19  agents for administration to MRI and MRA patients with renal insufficiency and failed to exercise

20  reasonable care with respect to post-sale warnings and instructions for safe use.

21      73.    At all relevant times, it was foreseeable to Defendants that consumers like Decedent

22  would suffer injury as a result of their failure to exercise ordinary care as described above.

23      74.    As a direct and proximate result of Defendants' negligence, Decedent suffered physical

24  injuries, harm, damages and economic loss, and death, and resulted in Plaintiffs' damages as set forth

25  below.

26      75.    The foregoing acts, conduct and omissions of Defendants were vile, base, willful,

27  malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the

28

COMPLAINT FOR DAMAGES AND JURY DEMAND

1    health, safety and rights of Decedent and other users of Defendants' products, and for the primary
2    purpose of increasing Defendants' profits. As such, Plaintiffs are entitled to exemplary damages.

3                              **THIRD CAUSE OF ACTION**
4                          **(Against Manufacturing Defendants)**
                                        **FRAUD**
5
6    76.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

7    77.    Manufacturing Defendants knowingly and intentionally made materially false and
8    misleading representations to Decedent's healthcare providers and to the public, to the effect that
     gadolinium-based contrast agents were safe for use and that their labeling, marketing and promotional
9    materials fully described all known risks associated with their product.
10
11   78.    Manufacturing Defendants' representations were in fact false. Gadolinium-based
     contrast agents are not safe for use and Defendants' labeling, marketing and promotional materials did
12   not fully describe all known risks of the products.
13
14   79.    Manufacturing Defendants had actual knowledge that gadolinium-based contrast agents
     created an unreasonable risk of serious bodily injury and death to consumers, especially patients with
15   renal impairment.
16
17   80.    Manufacturing Defendants knowingly and intentionally omitted this information from
     their labeling, marketing, and promotional materials and instead, labeled, promoted and marketed their
18   products as safe for use in order to increase and sustain sales.
19
20   81.    When Manufacturing Defendants made representations that gadolinium-based contrast
     agents were safe for use, they knowingly and intentionally concealed and withheld from Decedent, her
21   physicians and the public, the fact that their gadolinium-based contrast agents are not safe for use in
22   consumers with renal insufficiency.
23
24   82.    Manufacturing Defendants had a duty to disclose that gadolinium-based contrast agents
     are not safe for use in patients with renal insufficiency. Manufacturing Defendants had superior
25   knowledge of these facts that were material to Decedent and her healthcare providers' decisions to use
26   gadolinium-based contrast agents.
27

28

                                            11
                        COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
25

83.    Decedent and her healthcare providers reasonably and justifiably relied on the Manufacturing Defendants' representations that gadolinium-based contrast agents were safe for human use and that Manufacturing Defendants' labeling, marketing and promotional materials fully described all known risks associated with the products.

84.    Plaintiffs and Decedent did not know, and could not have learned of the facts that the Defendants omitted and suppressed.  The facts suppressed and concealed by the Defendants are material.  Had Decedent and her healthcare providers known that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency, Decedent would not have been injected with gadolinium-based contrast agents.

85.    As a direct and proximate result of Manufacturing Defendants' misrepresentations and concealment, Decedent was administered gadolinium-based contrast agents and suffered serious physical injury, harm, damages and economic loss and death, and resulted in Plaintiffs' damages as set forth below.

86.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health, safety and rights of Decedent and other users of Manufacturing Defendants' products, and for the primary purpose of increasing Manufacturing Defendants' profits.  As such Plaintiffs are entitled to exemplary damages.

## FOURTH CAUSE OF ACTION
### (Against Manufacturing Defendants)
## FRAUD: CONCEALMENT, SUPPRESSION OR OMISSION OF MATERIAL FACTS

87.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

88.    Manufacturing Defendants omitted, suppressed, or concealed material facts concerning the dangers and risk associated with the use of their gadolinium-based contrast agents, including but not limited to the risks to patients with kidney impairment of developing NSF, and the fact that safer alternatives were available.  Further, Manufacturing Defendants purposely downplayed and

- 12 -

1    understated the serious nature of the risks associated with use of their gadolinium-based contrast

2    agents in order to increase and sustain sales.

3        89.    As a direct and proximate result of Manufacturing Defendants' concealment of material

4    facts, Decedent was administered gadolinium-based contrast agents and suffered physical injury, harm,

5    damages and economic loss and death, and resulted in Plaintiffs' damages as set forth below.

6        90.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile,

7    base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard

8    for the health, safety and rights of Decedent and other users of Manufacturing Defendants' products,

9    and for the primary purpose of increasing Manufacturing Defendants' profits.  As such Plaintiffs are

10    entitled to exemplary damages.

11                              **FIFTH CAUSE OF ACTION**
                              **(Against Manufacturing Defendants)**
12                            **NEGLIGENT MISREPRESENTATION**

13        91.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

14        92.    Manufacturing Defendants supplied the public and Decedent's healthcare providers

15    with materially false and incomplete information with respect to the safety of their gadolinium-based

16    contrast agents.

17        93.    The false information supplied by Manufacturing Defendants was that gadolinium-

18    based contrast agents were safe.

19        94.    In supplying this false information, Manufacturing Defendants failed to exercise

20    reasonable care.

21        95.    The false information communicated by Defendants to Decedent and her healthcare

22    providers was material and Decedent justifiably relied in good faith on the information to her

23    detriment.

24        96.    As a direct and proximate result of Defendants' misrepresentations, Decedent was

25    administered gadolinium-based contrast agents and has suffered physical injury, harm, damages and

26    economic loss, and death, and resulted in Plaintiffs' damages as set forth below.

27

28

- 13 -

## SIXTH CAUSE OF ACTION
### (Against All Defendants)
### CONSUMERS LEGAL REMEDIES ACT

97.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

98.    This Complaint is filed and these proceedings are instituted, pursuant to California Civil Code section 1750, *et seq*, commonly referred to as the Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief, any other relief this Court deems proper, and attorneys' fees from Defendants.

99.    Among others, Defendants' conduct is in violation of California Civil Code section 1770(5), 1770(7) and 1770(9). Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of California Civil Code section 1750, *et seq*, including but not limited to the following:

    a.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses by impliedly representing that such products are approved for use with MRAs and other off-label uses, when in fact there is no such approval;

    b.   Representing that gadolinium-based contrast agents are safe and effective for all patients, including patients with kidney impairment, when in fact they are not;

    c.   Representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents when in fact they are not;

    d.   Marketing, promoting or selling their products as safer or superior to other brands of gadolinium-based contrast agents;

    e.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect;

    f.   Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs or other off-label uses by expressly or impliedly representing that they are safe for such use; and

- 14 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
28

g.   Remaining silent despite their knowledge of the growing body of evidence regarding the danger of NSF and doing so because the prospect of huge profits outweighed health and safety issues.

100.   Plaintiffs demand that Defendants immediately cease the illegal conduct alleged herein.

101.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will refrain from such activity in the future.

102.   Plaintiffs are entitled to injunctive relief and any other relief this Court deems proper, and attorneys' fees from Defendants as a result of such acts or practices.

## SEVENTH CAUSE OF ACTION
### (Against all Defendants)
### WRONGFUL DEATH

103.   Plaintiffs incorporate by reference and reallege each paragraph set forth above.

104.   As a proximate result of the conduct of Defendants, as described above, Decedent suffered from death, personal injuries and other economic and noneconomic damages.

105.   Pursuant to Section 377.60 of the California Code of Civil Procedure, decedent's surviving children may pursue a wrongful death cause of action in this case.

## EIGHTH CAUSE OF ACTION
### (Against all Defendants)
### SURVIVAL ACTION

106.   Plaintiffs incorporate by reference and reallege each paragraph set forth above.

107.   Prior to her death, Decedent had a cause of action against Defendants herein for personal injuries arising from her injection of gadolinium based contrast agents.  After the foregoing causes of action arose in her favor, Decedent, who would have been the plaintiff in this action if she had lived, died.

108.   As a proximate result of the conduct of Defendants, as described above, Decedent suffered from death, personal injuries and other economic and noneconomic damages.

109.   Pursuant to Section 377.60 of the California Code of Civil Procedure, decedent's surviving children may pursue a wrongful death cause of action in this case.

- 15 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
29

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an injunction prohibiting Defendants from engaging in the following conduct which violates the CLRA:

    a. Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses;

    b. Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as safe and effective for patients with kidney impairment;

    c. Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as by representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents;

    d. Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance in any way which implies that those products are safer or superior to other brands of gadolinium-based contrast agents;

    e. Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect.

2. Compensatory damages in excess of the jurisdictional amount, including, but not limited to loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support and training and guidance and other non-economic damages in an amount to be determined at trial of this action;

3. Past medical expenses, income, burial and funeral expenses, and other economic damages in an amount to be determined at trial of this action;

4. Punitive damages in an amount to be determined at trial of this action;

5. Pre- and post-judgment interest;

6. Attorneys' fees, expenses, and costs; and

7. Such further relief as this Court deems necessary, just, and proper.

Exh. A
30

1

Respectfully submitted this 5th day of June 2008.

2

3                                    LEVIN SIMES KAISER & GORNICK LLP

4
                                     By:
5                                         Lawrence J. Gornick, Esq.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

17
COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
31

ENDORSED
FILED
Superior Court of California
County of San Francisco

JUN 06 2008

GORDON PARK-LI, Clerk
BY: _____DEBORAH STEPPE_____
Deputy Clerk

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8            **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                     **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT     Case No: **CGC-08-476085**
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                     Plaintiffs,          **AFFIDAVIT OF VENUE**
13     vs.

14  BAYER HEALTHCARE
    PHARMACEUTICALS, INC.; BAYER
15  HEALTHCARE LLC; BAYER SCHERING
    PHARMA AG; GENERAL ELECTRIC
16  COMPANY; GE HEALTHCARE AS; GE
    HEALTHCARE, INC.; MALLINCKRODT,
17  INC.; BRACCO DIAGNOSTICS, INC.;
    McKESSON CORPORATION; MERRY X-
18  RAY CHEMICAL CORP.; and DOES 1
    through 35
19
20                   Defendants.
21

22      I, Lawrence J. Gornick, declare as follows:

23      1.      I am an attorney at law licensed to practice before this Court and a partner with the law
24  firm of Levin Simes Kaiser & Gornick LLP, attorneys of record for the Plaintiffs herein.

25      2.      On information and belief, at all times relevant herein, Defendants Bayer Healthcare
26  Pharmaceuticals, Inc.; Bayer Healthcare LLC; Bayer Schering Pharma AG; General Electric
27  Company; GE Healthcare AS; GE Healthcare, Inc.; Mallinckrodt, Inc.; Bracco Diagnostics, Inc.;
28

                                    1
                            AFFIDAVIT OF VENUE

Exh. A
32

1    McKesson Corporation; and Merry X-Ray Chemical Corp. were and are doing business in the City and

2    County of San Francisco.

3         3.       Based on the foregoing and pursuant to California Civil Code § 1780(c), this action

4    may be commenced in the Superior Court, Unlimited Jurisdiction of the City and County of San

5    Francisco.

6         I declare under penalty of perjury according to the laws of the State of California that the

7    foregoing is true and correct. Executed this 5th day of June 2008 in San Francisco, California

8

9

10

11                                    Lawrence J. Gornick, Esq.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            2
                                    AFFIDAVIT OF VENUE

Exh. A
33

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lawrence J. Gornick (SBN 136290)<br>Debra DeCarli (SBN 237642)<br>Levin Simes Kaiser & Gornick<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>TELEPHONE NO. (415)646-7160  FAX NO. *(Optional)* (415) 981-1270<br>E-MAIL ADDRESS *(Optional)* lgornick@lskg-law.com; ddecarli@lskg-l<br>ATTORNEY FOR *(Name)* Plaintiffs | **ENDORSED**<br>**FILED**<br>Superior Court of California<br>County of San Francisco<br><br>JUN 06 2008<br><br>**GORDON PARK-LI, Clerk**<br>BY: ___DEBORAH STEPPE___<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco | |
|---|---|
| STREET ADDRESS 400 McAllister Street | |
| MAILING ADDRESS | |
| CITY AND ZIP CODE San Francisco, CA 94102 | |
| BRANCH NAME | |

| PLAINTIFF/PETITIONER: Lorraine Ellen Johnson, et al | CASE NUMBER:<br>CGC-08-476085 |
|---|---|
| DEFENDANT/RESPONDENT: Bayer Healthcare Pharmaceuticals, Inc., et al | JUDICIAL OFFICER: |

| NOTICE OF RELATED CASE | DEPT.: |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Gerber v Bayer Corporation, et al
   b. Case number: CGC-07-468577
   c. Court:  X  same as above
      ☐ other state or federal court *(name and address)*:

   d. Department: 304
   e. Case type:  ☐ limited civil   X  unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify)*:

   f. Filing date: October 26, 2007
   g. Has this case been designated or determined as "complex?"   X  Yes   ☐ No
   h. Relationship of this case to the case referenced above *(check all that apply)*:
      ☐ involves the same parties and is based on the same or similar claims.
      X  arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      X  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
      ☐ Additional explanation is attached in attachment 1h
   i. Status of case:
      X  pending
      ☐ dismissed   ☐ with   ☐ without prejudice
      ☐ disposed of by judgment

2. a. Title: Parker v Bayer Healthcare Pharmaceuticals, Inc., et al
   b. Case number: CGC-08-475968
   c. Court:  X  same as above
      ☐ other state or federal court *(name and address)*:

   d. Department:

---

Exh. A
34

CM-015

| PLAINTIFF/PETITIONER: Lorraine Ellen Johnson, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Bayer Healthcare Pharmaceuticals, Inc., et al | |

2. *(continued)*

   e. Case type:    limited civil   X   unlimited civil    probate    family law    other *(specify)*:

   f. Filing date: June 4, 2008

   g. Has this case been designated or determined as "complex?"    Yes   X   No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      involves the same parties and is based on the same or similar claims.

      X   arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      involves claims against, title to, possession of, or damages to the same property.

      X   is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         Additional explanation is attached in attachment 2h

   i. Status of case:

      X   pending

      dismissed    with    without prejudice

      disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court:     same as above

       other state or federal court *(name and address)*:

   d. Department:

   e. Case type:    limited civil    unlimited civil    probate    family law    other *(specify)*:

   f. Filing date:

   g. Has this case been designated or determined as "complex?"    Yes    No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      involves the same parties and is based on the same or similar claims.

      arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      involves claims against, title to, possession of, or damages to the same property.

      is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         Additional explanation is attached in attachment 3h

   i. Status of case:

      pending

      dismissed    with    without prejudice

      disposed of by judgment

4.   Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 6/5/08

Lawrence J. Gornick, Esq.
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶

(SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

Exh. A
35



ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 0 6 2008

GORDON PARK-LI, Clerk
BY: _____DEBORAH STEPPE_____
Deputy Clerk

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8              **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                        **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT      Case No:
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS    **CGC-08-476085**
    LORRAINE STONDELL, Deceased,
12
                      Plaintiffs,
13
          vs.
14
    BAYER HEALTHCARE                        **DECLARATION OF ROBERT STONDELL**
15  PHARMACEUTICALS, INC.; BAYER           **RE SUCCESSOR-IN-INTEREST**
    HEALTHCARE LLC; BAYER SCHERING         **PURSUANT TO §377.11**
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35
20
                      Defendants.
21

22
           I, the undersigned hereby declare:
23
           1.      I, ROBERT STONDELL, am over the age of 18 years.
24
           2.      The name of the decedent is DORIS LORRAINE STONDELL (hereinafter
25  "Decedent").

26
           3.      The Decedent died in Ventura County, California on December 27, 2005.
27

28

                                              1
DECLARATION OF ROBERT STONDELL RE SUCCESSOR-IN-INTEREST PURSUANT TO...

Exh. A
36

1    4.    No proceeding is now pending in California for the administration of the Decedent's

2  estate.

3    5.    I am one of the Decedent's successors in interest (as defined in Section 377.11 of the

4  California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding.

5  I am the Decedents' surviving son.

6    6.    No other person has a superior right to commence the action or proceeding or to be

7  substituted for the Decedent in the pending action or proceeding.

8    7.    A certified copy of the decedent's Certificate of Death is attached hereto as Exhibit A.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing is

10  true and correct.  Executed this 5th day of June 2008 at _Stinson Beach_____. California.

11

12                                    _Robert Stondell_
                                      Robert Stondell

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ROBERT STONDELL, RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11

# Exhibit A

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF VENTURA
### VENTURA, CALIFORNIA

**CERTIFICATE OF DEATH**    3200556004429

| | | |
|---|---|---|
| Doris | Lorraine | Stondell |

12/20/1925    80    F

PA    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    Widowed    12/27/2005    1510

Some College    Caucasian

Homemaker    Homemaking    50

2500 N. Ponderosa Drive

Camarillo    Ventura    93010    15    CA

Lorraine Johnson - daughter    29330 W. Dakota Dr., Santa Clarita, CA 91354

Norman

llah    Carmichael    PA

Seidel    PA

12/31/2005    Conejo Mountain Memorial Park, 2052 Howard Rd., Camarillo, CA 93012

BU    Bernard M Verrel    6676

Conejo Mountain Funeral Home    FD 1375    12/30/2005

St. John's Regional Medical Center

Ventura    1600 N. Rose Ave.    Oxnard

Immediate Cause: Nephrogenic Fibrosing Dermopathy    Mths

End Stage Renal Disease    Yrs

Atrial Fibrillation; Anemia; Hypothyroidism

No

Diane Li, MD    A86068    12/30/2005

12/19/2005    12/27/2005    Diane Li, MD, 2200 Gonzales Rd., Oxnard, CA 91036

26090

*000643582*

**CERTIFIED COPY OF VITAL RECORDS**

STATE OF CALIFORNIA
COUNTY OF VENTURA } SS

DATE ISSUED 01/06/2006



This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Ventura County Public Health Department, if it bears the date of issue in red ink.



HEALTH OFFICER
VENTURA COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar

Exh. A
39

1 | Lawrence J. Gornick (SBN 136290)
2 | Debra DeCarli (SBN 237642)
  | Laura Brandenberg (SBN 238642)
3 | **LEVIN SIMES KAISER & GORNICK LLP**
  | 44 Montgomery Street, 36th Floor
  | San Francisco, CA 94104
4 | Telephone: (415) 646-7160
  | Fax: (415) 981-1270
5 | lgornick@lskg-law.com
  | ddecarli@lskg-law.com
6 | lbrandenberg@lskg-law.com
7 | Attorneys for Plaintiffs

ENDORSED
**FILED**
Superior Court of California
County of San Francisco

**JUN  6 2008**

GORDON PARK-LI, Clerk
BY: _____
DEBORAH STEPPE
Deputy Clerk

8 |

## SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION

9 |

## COUNTY OF SAN FRANCISCO

10 | LORRAINE ELLEN JOHNSON and ROBERT | Case No:
11 | GARY STONDELL, individually, and as |
   | Successors in Interest to the Estate of DORIS | **CGC-08-476085**
12 | LORRAINE STONDELL, Deceased, |
13 |                Plaintiffs, |
   |        vs. |
14 | |
15 | BAYER HEALTHCARE | **DECLARATION OF LORRAINE JOHNSON**
   | PHARMACEUTICALS, INC.; BAYER | **RE SUCCESSOR-IN-INTEREST**
16 | HEALTHCARE LLC; BAYER SCHERING | **PURSUANT TO §377.11**
   | PHARMA AG; GENERAL ELECTRIC |
17 | COMPANY; GE HEALTHCARE AS; GE |
   | HEALTHCARE, INC.; MALLINCKRODT, |
18 | INC.; BRACCO DIAGNOSTICS, INC.; |
   | McKESSON CORPORATION; MERRY X- |
19 | RAY CHEMICAL CORP.; and DOES 1 |
   | through 35 |
20 | |
21 |                Defendants. |

22 | I, the undersigned hereby declare:

23 |     1.    I, LORRAINE JOHNSON, am over the age of 18 years.

24 |
25 |     2.    The name of the decedent is DORIS LORRAINE STONDELL (hereinafter
   | "Decedent").

26 |
   |     3.    The Decedent died in Ventura County, California on December 27, 2005.
27 |
28 |

1

DECLARATION OF LORRAINE JOHNSON RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11

Exh. A
40

1    4.    No proceeding is now pending in California for the administration of the Decedent's

2  estate.

3    5.    I am one of the Decedent's successors in interest (as defined in Section 377.11 of the

4  California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding.

5  I am the Decedents' surviving daughter.

6    6.    No other person has a superior right to commence the action or proceeding or to be

7  substituted for the Decedent in the pending action or proceeding.

8    7.    A certified copy of the Decedent's Certificate of Death is attached to the Declaration of

9  Robert Stondell as Exhibit A.

10    I declare under penalty of perjury under the laws of the State of California that the foregoing is

11  true and correct. Executed this 5th day of June 2008 at _____Northridge_____, California.

12

13

14    Lorraine Johnson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

DECLARATION OF LORRAINE JOHNSON RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11



**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?

adr@sfbar.org or 415-982-1600

EXPERIENCED MEDIATORS ARE AVAILABLE IN THE FOLLOWING AREAS

- Business
- Civil Rights
- Commercial
- Construction
- Contracts
- Disability
- Discrimination
- Education
- Employment/Workplace
- Environmental
- Family
- Fee Disputes
- Financial
- Gay/Lesbian/Bisexual/Transgender Issues
- Government
- Insurance
- Intellectual Property
- Intra-Organizational
- Labor
- Landlord/Tenant
- Land Use
- Malpractice:
- Legal-Medical-Professional
- Partnership Dissolutions
- Personal Injury
- Probate/Trust
- Products Liability
- Real Estate
- Securities
- Taxation
- Uninsured Motorist
- Women's Issues
- And more...

Exh. A
42

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.





## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party, commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours or formal mediation training.

## More Information



Our Web site, www.sfbar.org/mediation, provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 10+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

## WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

Exh. A
43

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California
County of San Francisco**

Exh. A
44




# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Exh. A
45

 

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

 

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

ADR-1   10/07 (ja)                                                    Page 4

Exh. A
47




voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.



A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule **4 provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.



### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

Exh. A
50

 

### Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

 

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672




# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

**The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:**

☐  **Private Mediation**          ☐    **Mediation Services of BASF**    ☐    **Judicial Mediation**
☐  **Binding arbitration**                                                                                Judge _____
☐  **Non-binding judicial arbitration**                                                          Judge _____
☐  **BASF Early Settlement Program**
☐  **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____        _____        _____
Name of Party Stipulating                 Name of Party or Attorney Executing Stipulation        Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                          Dated: _____

_____        _____        _____
Name of Party Stipulating                 Name of Party or Attorney Executing Stipulation        Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                          Dated: _____

_____        _____        _____
Name of Party Stipulating                 Name of Party or Attorney Executing Stipulation        Signature of Party or Attorney

☐  Plaintiff     ☐  Defendant     ☐  Cross-defendant                          Dated: _____

☐  *Additional signature(s) attached*

ADR-2  3/06                              STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

 

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000) ☐ **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | |

| **A CASE MANAGEMENT CONFERENCE** is scheduled as follows: |
|---|
| Date:          Time:          Dept.:          Div.:          Room: |
| Address of court *(if different from the address above)*: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a.   Type of case in ☐ complaint ☐ cross-complaint     *(describe, including causes of action)*:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

Exh. A
55




**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. (If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)

☐ (If more space is needed, check this box and attach a page designated as Attachment 4b.)

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial   (if more than one party, provide the name of each party requesting a jury trial.)

6. **Trial date**
   a. ☐ The trial has been set for (date):
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint (if not, explain):

   c. Dates on which parties or attorneys will not be available for trial (specify dates and explain reasons for unavailability):

7. **Estimated length of trial**
   The party or parties estimate that the trial will take (check one):
   a. ☐ days (specify number):
   b. ☐ hours (short causes) (specify):

8. **Trial representation** (to be answered for each party)
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference (specify code section):

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by (date):
    c. ☐ The case has gone to an ADR process (indicate status):

CM-110 [Rev. January 1, 2007]   **CASE MANAGEMENT STATEMENT**   Page 2 of 4



CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other *(specify):*

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

---

CM-110 [Rev. January 1, 2007]              **CASE MANAGEMENT STATEMENT**                    Page 3 of 4

Exh. A
57

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. [ ] The party or parties have completed all discovery.

b. [ ] The following discovery will be completed by the date specified (describe all anticipated discovery):

| Party | Description | Date |
|---|---|---|

c. [ ] The following discovery issues are anticipated (specify):

**18. Economic Litigation**

a. [ ] This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other issues**

[ ] The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**

a. [ ] The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21. Case management orders**

Previous case management orders in this case are (check one): [ ] none   [ ] attached as Attachment 21.

**22.** Total number of pages attached (if any):

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▶
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▶
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)

[ ] Additional signatures are attached.

CM-110 [Rev. January 1, 2007]          **CASE MANAGEMENT STATEMENT**          Page 4 of 4

Exh. A
58






# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

### Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable David J. Ballati | The Honorable James J. McBride |
| The Honorable Anne Bouliane | The Honorable Kevin M. McCarthy |
| The Honorable Ellen Chaitin | The Honorable John E. Munter |
| The Honorable Robert L. Dondero | The Honorable Ronald Quidachay |
| The Honorable Ernest H. Goldsmith | The Honorable A. James Robertson, II |
| The Honorable Harold E. Kahn | The Honorable John K. Stewart |
| The Honorable Patrick J. Mahoney | The Honorable Mary E. Wiss |
| The Honorable Tomar Mason | |

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
3  **LEVIN SIMES KAISER & GORNICK LLP**
   44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com

7  Attorneys for Plaintiffs

8          SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION

9                       COUNTY OF SAN FRANCISCO

10  LORRAINE ELLEN JOHNSON and ROBERT      Case No: CGC-08-476085
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                        Plaintiffs,        **DECLARATION FOR ADDITIONAL**
13                                          **DISCOVERY**
            vs.
14
    BAYER HEALTHCARE
15  PHARMACEUTICALS, INC.; BAYER
    HEALTHCARE LLC; BAYER SCHERING
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35
20
                        Defendants.
21

22

23      I, Debra DeCarli, declare:

24          1.    I am presently the attorney for Plaintiffs Lorraine Johnson and Robert Stondell,

25  parties to this action.

26          2.    I am propounding to GENERAL ELECTRIC COMPANY the attached Special

27  Interrogatories.

28
                                    1

Exh. A
60

1        3.    This set of Special Interrogatories will cause the total number of specially

2    prepared interrogatories propounded to the party to whom they are directed to exceed the number of

3    specially prepared interrogatories permitted by Section 2030.030 of the Code of Civil Procedure.

4        4.    I have not previously propounded interrogatories to this party other than official

5    form interrogatories.

6        5.    This set of interrogatories contains a total of 56 specially prepared

7    interrogatories.

8        6.    I am familiar with the issues and the previous discovery conducted by all of the

9    parties in this case.

10        7.    I have personally examined each of the questions in this set of interrogatories.

11        8.    This number of questions is warranted under Section 2030.040 of the Code of

12    Civil Procedure because of the complex nature of this case.

13        9.    None of the questions in this set of interrogatories is being propounded for any

14    improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed, or to

15    cause unnecessary delay or needless increase in the cost of litigation.

16        I declare under the penalty of perjury under the laws of the State of California that the

17    foregoing is true and correct.  Executed this 12th day of June 2008.

18

19

20    Debra DeCarli

21    Debra DeCarli, Esq.

22

23

24

25

26

27

28

2

DECLARATION FOR ADDITIONAL DISCOVERY

Exh. A
61

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8              **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                         **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT          Case No: CGC-08-476085
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                         Plaintiffs,
13          vs.                                   **SPECIAL INTERROGATORIES (SET ONE)**
                                                  **TO DEFENDANT GENERAL ELECTRIC**
14  BAYER HEALTHCARE                              **COMPANY**
    PHARMACEUTICALS, INC.; BAYER
15  HEALTHCARE LLC; BAYER SCHERING
    PHARMA AG; GENERAL ELECTRIC
16  COMPANY; GE HEALTHCARE AS; GE
    HEALTHCARE, INC.; MALLINCKRODT,
17  INC.; BRACCO DIAGNOSTICS, INC.;
    McKESSON CORPORATION; MERRY X-
18  RAY CHEMICAL CORP.; and DOES 1
    through 35
19
20                       Defendants.
21

22      PROPOUNDING PARTY:    Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY
                              STONDELL
23
24      RESPONDING PARTY:     Defendant GENERAL ELECTRIC COMPANY

25      SET NO.:              ONE

26      Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL hereby request,

27  pursuant to California Code of Civil Procedure section 2030.010 et. seq., that Defendant GENERAL

28  ELECTRIC COMPANY respond to this First Set of Special Interrogatories. Plaintiffs request that

                                            1
        ─────────────────────────────────────────────────────────
        SPECIAL INTERROGATORIES (SET ONE) TO GENERAL ELECTRIC COMPANY

Exh. A
62

1  Defendant serve its written responses to these Special Interrogatories, at the offices of Levin Simes

2  Kaiser & Gornick, LLP, 44 Montgomery Street, 36th Floor, San Francisco, CA 94104, within thirty

3  (30) days from the date of service of these Requests.

4  **DEFINITIONS**

5    1.    "DOCUMENTS" includes writings and electronically stored information as described

6  in Cal. Evid. Code §250.

7    2.    "RELATED TO" and "RELATING TO" mean constituting, pertaining to, in

8  connection with, reflecting, respecting, regarding, RELATED TO, referring to, based upon, stating,

9  showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting,

10  embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying,

11  identifying, or in any manger logically, factually, indirectly or directly, or in any other way connecting

12  to the matter addressed in the request, in part or whole.

13    3.    "COMMUNICATIONS" means any matter or method in which information is

14  communicated from one human being to another including (but not limited to) any written, oral, or

15  electronic contact and/or discussion or exchange of information.

16    4.    "PERSON" shall include any individual or entity.

17    5.    "GBCA" shall refer to Gadolinium Based Contrast Agents including: Omniscan,

18  gadodiamide, Gd-DTPA-BMA; OptiMARK, gadoversetamide, Gd-DTPA-BMEA; Magnevist,

19  gadopentetate dimeglumine, Gd-DTPA; MultiHance. gadobenate dimeglumine, Gd-BOPTA;

20  Prohance, gadoteridol, Gd-HP-DO3A.

21    6.    "YOU," "YOUR," or "GE" refers to Defendants General Electric Company, GE

22  Healthcare, Inc. and GE Healthcare AS, and/or its predecessor(s), including all Salutar, Nycomed and

23  Amersham entities, as well as all partners, directors, officers, employees, servants, agents, attorneys,

24  joint ventures, or other representatives, including all corporations and entities affiliated with General

25  Electric Company, GE Healthcare, Inc. and GE Healthcare AS and any other named Defendants in this

26  lawsuit. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as

27  any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other

28  representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign

- 2 -

SPECIAL INTERROGATORIES (SET ONE) TO GENERAL ELECTRIC COMPANY

1    parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors,

2    officers, employees, servants, agents, joint ventures or other representatives.

3         7.    "NSF" shall refer to the disease Nephrogenic Systemic Fibrosis or Nephrogenic

4    Fibrosing Dermopathy.

5         8.    "MRI" shall refer to magnetic resonance imaging.

6         9.    "MRA" shall refer to magnetic resonance angiography or arteriography.

7         10.    "DECEDENT'S HEALTHCARE FACILITIES" shall mean Ventura Coast Imaging

8    Center and Community Memorial Hospital of San Buenaventura.

9         11.    "CUSTODIAL FILE" shall mean DOCUMENTS associated with, authored, received,

10    or maintained by an employee of McKESSON including but not limited to DOCUMENTS maintained

11    in the employee's hard copy files, DOCUMENTS maintained on the employee's (desktop and/or

12    laptop) computer, DOCUMENTS maintained on McKESSON's network, emails (including those

13    existing in ".pst" format) maintained in the employee's McKESSON email account, and the contents

14    of any e-rooms or other areas on the McKESSON computer network owned, managed, maintained by,

15    or associated with the employee.

16         12.    "DECEDENT" shall refer to Doris L. Stondell.

17    **SPECIAL INTERROGATORIES**

18    **SPECIAL INTERROGATORY NO. 1:**

19         Please IDENTIFY, by date, brand name, manufacturer, purchase order or invoice number and

20    lot number all sales or deliveries of GBCAs to DECEDENT'S HEALTHCARE FACILITIES.

21    **SPECIAL INTERROGATORY NO. 2:**

22         Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

23    FACILITIES RELATED TO GBCAs.

24    **SPECIAL INTERROGATORY NO. 3:**

25         Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

26    FACILITIES RELATED TO NSF.

27

28

- 3 -

Exh. A
64

**SPECIAL INTERROGATORY NO. 4:**

 Please IDENTIFY all PERSONS at DECEDENT'S HEALTHCARE FACILITIES with whom YOU COMMUNICATED RELATED TO GBCAs.

**SPECIAL INTERRGATORY NO. 5:**

 Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 6:**

 Please IDENTIFY all PERSONS at DECEDENT'S HEALTHCARE FACILITIES with whom YOU COMMUNICATED RELATED TO NSF.

**SPECIAL INTERRGATORY NO. 7:**

 Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with DECEDENT'S HEALTHCARE FACILITIES RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 8:**

 Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 9:**

 For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 10:**

 Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with DECEDENT'S HEALTHCARE FACILITIES RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 11:**

 For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

SPECIAL INTERROGATORIES (SET ONE) TO GENERAL ELECTRIC COMPANY

Exh. A
65

1  **SPECIAL INTERROGATORY NO. 12:**

2      Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to

3  DECEDENT'S HEALTHCARE FACILITIES.

4  **SPECIAL INTERROGATORY NO. 13:**

5      Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to

6  DECEDENT'S HEALTHCARE FACILITIES.

7  **SPECIAL INTERROGATORY NO. 14:**

8      Please IDENTIFY any of YOUR sales personnel who have ever visited DECEDENT'S

9  HEALTHCARE FACILITIES RELATED TO GBCAs.

10  **SPECIAL INTERROGATORY NO. 15:**

11      Please IDENTIFY all DOCUMENTS RELATED TO any visits by YOUR sales personnel to

12  DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

13  **SPECIAL INTERROGATORY NO. 16:**

14      Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

15  FACILITIES RELATED TO the safety or efficacy of GBCAs for MRIs.

16  **SPECIAL INTERROGATORY NO. 17:**

17      Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

18  FACILITIES RELATED TO the safety or efficacy of GBCAs for MRAs.

19  **SPECIAL INTERROGATORY NO. 18:**

20      Please identify all warnings RELATED TO GBCAs YOU provided to DECEDENT'S

21  HEALTHCARE FACILITIES.

22  **SPECIAL INTERROGATORY NO. 19:**

23      Please identify all warnings RELATED TO NSF YOU provided to DECEDENT'S

24  HEALTHCARE FACILITIES.

25  **SPECIAL INTERROGATORY NO. 20:**

26      Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO

27  GBCAs.

28

1  **SPECIAL INTERROGATORY NO. 21:**

2       Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO

3  NSF.

4  **SPECIAL INTERROGATORY NO. 22:**

5       Please IDENTIFY all PERSONS at McKesson Corporation with whom YOU

6  COMMUNICATED RELATED TO GBCAs.

7  **SPECIAL INTERRGATORY NO. 23:**

8       Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with McKesson

9  Corporation RELATED TO GBCAs.

10  **SPECIAL INTERROGATORY NO. 24:**

11       Please IDENTIFY all PERSONS at McKesson Corporation with whom YOU

12  COMMUNICATED RELATED TO NSF.

13  **SPECIAL INTERRGATORY NO. 25:**

14       Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with McKesson

15  Corporation RELATED TO NSF.

16  **SPECIAL INTERROGATORY NO. 26:**

17       Please IDENTIFY, by name, current job title or position and job title or position at time of

18  communication all PERSONS employed by YOU who communicated with McKesson Corporation

19  RELATED TO GBCAs.

20  **SPECIAL INTERROGATORY NO. 27:**

21       For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is

22  no longer employed by YOU, please provide last known address and telephone number.

23  **SPECIAL INTERROGATORY NO. 28:**

24       Please IDENTIFY, by name, current job title or position and job title or position at time of

25  communication all PERSONS employed by YOU who communicated with McKesson Corporation

26  RELATED TO NSF.

27

28

Exh. A
67

**SPECIAL INTERROGATORY NO. 29:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 30:**

Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 31:**

Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 32:**

Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO the safety or efficacy of GBCAs for MRIs.

**SPECIAL INTERROGATORY NO. 33:**

Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO the safety or efficacy of GBCAs for MRAs.

**SPECIAL INTERROGATORY NO. 34:**

Please identify all warnings RELATED TO GBCAs YOU provided to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 35:**

Please identify all warnings RELATED TO NSF YOU provided to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 36:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 37:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 38:**

Please IDENTIFY all PERSONS at Merry X-Ray Chemical Corporation with whom YOU COMMUNICATED RELATED TO GBCAs.

- 7 -

1  **SPECIAL INTERRGATORY NO. 39:**

2      Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with Merry X-

3  Ray Chemical Corporation RELATED TO GBCAs.

4  **SPECIAL INTERROGATORY NO. 40:**

5      Please IDENTIFY all PERSONS at Merry X-Ray Chemical Corporation with whom YOU

6  COMMUNICATED RELATED TO NSF.

7  **SPECIAL INTERRGATORY NO. 41:**

8      Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with Merry X-

9  Ray Chemical Corporation RELATED TO NSF.

10  **SPECIAL INTERROGATORY NO. 42:**

11      Please IDENTIFY, by name, current job title or position and job title or position at time of

12  communication all PERSONS employed by YOU who communicated with Merry X-Ray Chemical

13  Corporation RELATED TO GBCAs.

14  **SPECIAL INTERROGATORY NO. 43:**

15      For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is

16  no longer employed by YOU, please provide last known address and telephone number.

17  **SPECIAL INTERROGATORY NO. 44:**

18      Please IDENTIFY, by name, current job title or position and job title or position at time of

19  communication all PERSONS employed by YOU who communicated with Merry X-Ray Chemical

20  Corporation RELATED TO NSF.

21  **SPECIAL INTERROGATORY NO. 45:**

22      For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is

23  no longer employed by YOU, please provide last known address and telephone number.

24  **SPECIAL INTERROGATORY NO. 46:**

25      Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to Merry

26  X-Ray Chemical Corporation.

27

28

SPECIAL INTERROGATORIES (SET ONE) TO GENERAL ELECTRIC COMPANY

1  **SPECIAL INTERROGATORY NO. 47:**

2      Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to Merry X-

3  Ray Chemical Corporation.

4  **SPECIAL INTERROGATORY NO. 48:**

5      Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation

6  RELATED TO the safety or efficacy of GBCAs for MRIs.

7  **SPECIAL INTERROGATORY NO. 49:**

8      Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation

9  RELATED TO the safety or efficacy of GBCAs for MRAs.

10  **SPECIAL INTERROGATORY NO. 50:**

11      Please identify all warnings RELATED TO GBCAs YOU provided to Merry X-Ray Chemical

12  Corporation.

13  **SPECIAL INTERROGATORY NO. 51:**

14      Please identify all warnings RELATED TO NSF YOU provided to Merry X-Ray Chemical

15  Corporation.

16  **SPECIAL INTERROGATORY NO. 52:**

17      Please IDENTIFY, by name of the database, the subject matter of the database, the location of

18  the database, and the type of platform required to access the database information, all databases related

19  to GBCAs.  The types of databases requested include but are not limited to databases concerning

20  clinical trials; adverse events; sales, including but not limited to detail call logs; sales tracking;

21  marketing; regulatory; scientific literature; Professional Information Requests (PIRs); Safety; and

22  Compliance.

23  **SPECIAL INTERROGATORY NO. 53:**

24      Please IDENTIFY all e-rooms or other online or network locations for shared collaborations

25  that contain information related to GBCAs.

26  **SPECIAL INTERROGATORY NO. 54:**

27      Please IDENTIFY all e-rooms or other online or network locations for shared collaborations

28  that contain information related to NSF.

9

**SPECIAL INTERROGATORY NO. 55:**

Please IDENTIFY YOUR policies related to retention, storage, back-up, deletion or destruction of DOCUMENTS and data.

**SPECIAL INTERROGATORY NO. 56:**

Please IDENTIFY, by name, address, relationship to YOU, and to which interrogatory, all PERSONS who provided information responsive to these interrogatories.


Dated:  June 12, 2008                            LEVIN SIMES KAISER & GORNICK LLP


                                        By: _Debra DeCarli_
                                            Debra DeCarli, Esq.

---

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone:  (415) 646-7160
   Fax:  (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8            **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                        **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT          Case No:  CGC-08-476085
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                          Plaintiffs,          **REQUEST FOR PRODUCTION OF**
13                                             **DOCUMENTS (SET ONE) TO DEFENDANT**
           vs.                                 **GENERAL ELECTRIC COMPANY**
14
    BAYER HEALTHCARE
15  PHARMACEUTICALS, INC.; BAYER
    HEALTHCARE LLC; BAYER SCHERING
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35
20                        Defendants.
21

22      PROPOUNDING PARTY:    Plaintiff LORRAINE ELLEN JOHNSON and ROBERT GARY
                              STONDELL
23
        RESPONDING PARTY:     Defendant GENERAL ELECTRIC COMPANY
24
        SET NO.:              ONE
25
        Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL hereby request,
26
    pursuant to California Code of Civil Procedure section 2031.010 et. seq., that Defendant GENERAL
27
    ELECTRIC COMPANY respond to this First Set of Requests for Production of DOCUMENTS.
28

                                          1
            **REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE) TO GENERAL ELECTRIC COMPANY**

1   Plaintiffs request that Defendant serve its written responses to these requests, and produce all

2   responsive DOCUMENTS and things, at the offices of Levin Simes Kaiser & Gornick, LLP, 44

3   Montgomery Street, 36th Floor, San Francisco, CA 94104, within thirty (30) days from the date of

4   service of these Requests.

5                              **INSTRUCTIONS**

6       In responding to this First Request for Production, YOU are required to produce all

7   DOCUMENTS in YOUR possession, custody, or control, including DOCUMENTS which are

8   reasonably available to YOU, or in the possession, custody, or control of YOUR agents, consignees,

9   representatives, or investigators, or YOUR attorneys or their agents, employees, representatives, or

10   investigators.

11       If any of the DOCUMENTS or information requested cannot be produced in full, YOU are

12   required to specify, to the extent possible, the reasons for YOUR inability to produce the remainder,

13   and the approximate date when YOU expect to produce such DOCUMENTS, if at all.

14   If any request is deemed to call for the production of privileged or otherwise protected information

15   or materials, YOU must provide the following information in a written response, designating and

16   identifying those DOCUMENTS or information withheld from production on grounds of privilege:

17     (a)     The reason for withholding the DOCUMENT or information;

18     (b)     A statement of the legal basis for the claim of privilege, work product, or other ground for

19            non-disclosure;

20     (c)     A brief description of the DOCUMENT, including:

21            a.   The date of the DOCUMENT;

22            b.   The number of pages, attachments, and appendices;

23            c.   The name(s) of its author(s) or preparer(s) and identification by employment and title of

24               each such PERSON;

25            d.   The name of each PERSON who was sent, shown, or copied on the DOCUMENT, or

26               has had access to or custody of the DOCUMENT, together with an identification of

27               each such PERSON;

28

**REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE) TO GENERAL ELECTRIC COMPANY**

  e. The present custodian; and,

  f. The subject matter of the DOCUMENT, and in the case of any DOCUMENT relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

 With respect to each DOCUMENT requested which has been lost, destroyed, or otherwise disposed of since its preparation or receipt, YOU shall provide the following information separately as to each such DOCUMENT:

 (a) A general description of the subject matter, author, recipient(s), date;

 (b) The identity of each PERSON who has received a copy or had an opportunity to receive a copy thereof;

 (c) The last custodian of the DOCUMENT or copies thereof;

 (d) The full particulars or circumstances whereby the DOCUMENT was disposed of, destroyed, or otherwise lost;

 (e) Copies of any DOCUMENT destruction instructions or directives; and,

 (f) Copies of any DOCUMENT destruction acknowledgement forms or receipts for the destruction of DOCUMENTS.

 All DOCUMENTS produced in response to these requests shall be either:

 (a) Organized and labeled to correspond with the number of the specific request to which the DOCUMENTS are responsive, or

 (b) Produced in the order and in the manner that they are kept in the usual course of business.

 All DOCUMENTS that exist in electronic form are to be produced in their native format.

## DEFINITIONS

 1. "DOCUMENTS" includes writings and electronically stored information as described in Cal. Evid. Code §250.

 2. "RELATED TO" and "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, RELATED TO, referring to, based upon, stating,

1   showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting,

2   embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying,

3   identifying, or in any manger logically, factually, indirectly or directly, or in any other way connecting

4   to the matter addressed in the request, in part or whole.

5         3.    "COMMUNICATIONS" means any matter or method in which information is

6   communicated from one human being to another including (but not limited to) any written, oral, or

7   electronic contact and/or discussion or exchange of information.

8         4.    "PERSON" shall include any individual or entity.

9         5.    "OMNISCAN" means the Gadolinium Based Contrast Agent marketed in the United

10  States as Omniscan, including all predecessor compounds that were investigated as part of the

11  development of Omniscan.  The term Omniscan also includes the same chemical product even if it was

12  marketed in a different company under a different name.  It also includes all constituent chemical

13  entities that constitute Omniscan, including Gadodiamide (Gd-DPTA-BMA) and any chelate that was

14  added to or combined with gadodiamide to make what is marketed as Omniscan.

15        6.    "GBCA" shall refer to Gadolinium Based Contrast Agents including: Omniscan,

16  gadodiamide, Gd-DTPA-BMA; OptiMARK, gadoversetamide, Gd-DTPA-BMEA; Magnevist,

17  gadopentetate dimeglumine, Gd-DTPA; MultiHance, gadobenate dimeglumine, Gd-BOPTA;

18  Prohance, gadoteridol, Gd-HP-DO3A.

19        7.    "YOU," "YOUR," "YOURS" refers to Defendants General Electric Company, GE

20  Healthcare, Inc. and GE Healthcare AS, and/or its predecessor(s), including all Salutar, Nycomed and

21  Amersham entities, as well as all partners, directors, officers, employees, servants, agents, attorneys,

22  joint ventures, or other representatives, including all corporations and entities affiliated with General

23  Electric Company, GE Healthcare, Inc. and GE Healthcare AS and any other named Defendants in this

24  lawsuit. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as

25  any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other

26  representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign

27  parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors,

28  officers, employees, servants, agents, joint ventures or other representatives.

Exh. A
75

1    8.    "GE" refers to each of the Defendants GENERAL ELECTRIC COMPANY and GE

2    HEALTHCARE, INC., and GE HEALTHCARE AS, as well as all partners, directors, officers,

3    employees, servants, agents, attorneys, joint ventures, or other representatives, including all

4    corporations and entities affiliated with GENERAL ELECTRIC.  The terms shall also include all

5    predecessor business entities, as well as any predecessor's partners, directors, officers, employees,

6    servants, agents, joint ventures, or other representatives, including AMERSHAM  HEALTH INC. and

7    all other relevant AMERSHAM, NYCOMED and SALUTAR entities.  The terms shall also include all

8    foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent

9    companies' partners, directors, officers, employees, servants, agents, joint ventures, or other

10    representatives.

11    9.    "NSF" shall refer to the disease Nephrogenic Systemic Fibrosis or Nephrogenic

12    Fibrosing Dermopathy.

13    10.    "MRI" shall refer to magnetic resonance imaging.

14    11.    "MRA" shall refer to magnetic resonance angiography or arteriography.

15    12.    "DECEDENT'S HEALTHCARE FACILITIES" shall mean Ventura Coast Imaging

16    Center and Community Memorial Hospital of San Buenaventura.

17    13.    "McKESSON" refers to McKESSON CORPORATION, as well as all partners,

18    directors, officers, employees, servants, agents, attorneys, joint ventures, predecessors or other

19    representatives.

20    14.    "MERRY X-RAY" refers to MERRY X-RAY CHEMICAL CORPORATION, as well

21    as all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, predecessors

22    or other representatives.

23    15.    "CUSTODIAL FILE" shall mean DOCUMENTS associated with, authored, received,

24    or maintained by an employee of YOURS including but not limited to DOCUMENTS maintained in

25    the employee's hard copy files, DOCUMENTS maintained on the employee's (desktop and/or laptop)

26    computer, DOCUMENTS maintained on YOUR network, emails (including those existing in ".pst"

27    format) maintained in the employee's GE email account, and the contents of any e-rooms or other

28    areas on YOUR computer network owned, managed, maintained by, or associated with the employee.

5

**REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE) TO GENERAL ELECTRIC COMPANY**

16.    "DECEDENT" shall refer to Doris L. Stondell.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and McKESSON RELATED TO DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and MERRY X-RAY RELATED TO DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and McKESSON RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and MERRY X-RAY RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS RELATED TO exclusive supply agreements between YOU and McKESSON RELATED TO GBCAS.

### REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS RELATED TO exclusive supply agreements between YOU and MERRY X-RAY RELATED TO GBCAS.

REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE) TO GENERAL ELECTRIC COMPANY

Exh. A
77

1  **REQUEST FOR PRODUCTION NO. 9:**

2      All DOCUMENTS RELATED TO exclusive supply agreements between YOU and

3  DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

4  **REQUEST FOR PRODUCTION NO. 10:**

5      All DOCUMENTS RELATED TO marketing agreements with McKESSON related to

6  GBCAS.

7  **REQUEST FOR PRODUCTION NO. 11:**

8      All DOCUMENTS RELATED TO marketing agreements with MERRY X-RAY related to

9  GBCAS.

10  **REQUEST FOR PRODUCTION NO. 12:**

11      All DOCUMENTS RELATED TO marketing of GBCAS to DECEDENT'S HEALTHCARE

12  FACILITIES.

13  **REQUEST FOR PRODUCTION NO. 13:**

14      All DOCUMENTS RELATED TO distribution agreements with McKESSON RELATED TO

15  GBCAS.

16  **REQUEST FOR PRODUCTION NO. 14:**

17      All DOCUMENTS RELATED TO distribution agreements with MERRY X-RAY RELATED

18  TO GBCAS.

19  **REQUEST FOR PRODUCTION NO. 15:**

20      All DOCUMENTS RELATED TO distribution agreements with DECEDENT'S

21  HEALTHCARE FACILITIES RELATED TO GBCAS.

22  **REQUEST FOR PRODUCTION NO. 16:**

23      All DOCUMENTS RELATED TO sales of GBCAS by YOU to DECEDENT'S

24  HEALTHCARE FACILITIES.

25  **REQUEST FOR PRODUCTION NO. 17:**

26      All DOCUMENTS RELATED TO all services YOU performed for DECEDENT'S

27  HEALTHCARE FACILITIES RELATED TO GBCAS.

28

REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE) TO GENERAL ELECTRIC COMPANY

Exh. A
78

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS RELATED TO all services McKESSON performed for YOU RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS RELATED TO all services MERRY X-RAY performed for YOU RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 20:**

All packaging, including but not limited to labels and package inserts, RELATED TO YOUR packaging or re-packaging of GBCAS for sale or distribution to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and drafts of DOCUMENTS RELATED TO YOUR packaging or re-packaging of GBCAS for sale or distribution to DECEDENT'S HEALTHCARE FACILITIES, including but not limited to labels and package inserts, and including the reasons for any changes to the packaging or labeling.

**REQUEST FOR PRODUCTION NO. 22:**

All call logs for YOUR GBCA sales personnel who have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 23:**

The CUSTODIAL FILE for each of YOUR GBCA sales personnel who have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS RELATED TO the recording or tracking of GBCA related sales calls to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS RELATED TO the provision of GBCAS samples to any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS RELATED TO the use of GBCAS by any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 27:**

All "Dear Doctor" or "Dear Healthcare Provider" letters RELATED TO GBCAS sent to any of DECEDENT'S HEALTHCARE FACILITIES and all DOCUMENTS RELATED TO such letters.

**REQUEST FOR PRODUCTION NO. 28:**

All advertisements and promotional materials RELATED TO GBCAS and all related DOCUMENTS provided to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 29:**

All newsletters generated by or distributed to YOUR GBCA sales personnel who have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 30:**

If YOU contend that DECEDENT or DECEDENT'S HEALTHCARE FACILITIES were aware or should have been aware of any hazards associated with use of GBCAS, PRODUCE all DOCUMENTS that support YOUR contention.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS RELATED TO the safety or efficacy of GBCAS, including OMNISCAN, for MRIs which YOU provided to DECEDENT'S HEALTHCARE PROVIDERS.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS RELATED TO the safety or efficacy of GBCAS, including OMNISCAN, for MRAs which YOU provided to DECEDENT'S HEALTHCARE PROVIDERS.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS regarding GBCAS, including OMNISCAN, that YOU provided to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS RELATED TO NSF that YOU provided to DECEDENT'S HEALTHCARE FACILITIES.

1  **REQUEST FOR PRODUCTION NO. 35:**

2      All DOCUMENTS RELATED TO training provided to YOUR GBCA sales personnel who

3  have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

4  **REQUEST FOR PRODUCTION NO. 36:**

5      All DOCUMENTS RELATED TO the analysis of GBCA use by DECEDENT'S

6  HEALTHCARE FACILITIES.

7  **REQUEST FOR PRODUCTION NO. 37:**

8      All DOCUMENTS RELATED TO the means, manner, and mode of distribution of GBCAS to

9  DECEDENT'S HEALTHCARE PROVIDERS.

10  **REQUEST FOR PRODUCTION NO. 38:**

11      All DOCUMENTS that reflect annual sales figures of GBCAS, including OMNISCAN, to

12  DECEDENT'S HEALTHCARE FACILITIES.

13  **REQUEST FOR PRODUCTION NO. 39:**

14      All responses to requests from physicians associated with DECEDENT'S HEALTHCARE

15  FACILITIES for information RELATED TO GBCAS, including OMNISCAN.

16  **REQUEST FOR PRODUCTION NO. 40:**

17      All responses to requests from physicians associated with DECEDENT'S HEALTHCARE

18  FACILITIES for information RELATED TO NSF.

19  **REQUEST FOR PRODUCTION NO. 41:**

20      All DOCUMENTS RELATED TO YOUR funding or sponsorship of education programs

21  RELATED TO healthcare providers RELATED TO DECEDENT'S HEALTHCARE FACILITIES.

22  **REQUEST FOR PRODUCTION NO. 42:**

23      All DOCUMENTS RELATED TO marketing MR systems for use with GBCAs, including

24  OMNISCAN, to DECEDENT'S HEALTHCARE FACILITIES.

25  **REQUEST FOR PRODUCTION NO. 43:**

26      All DOCUMENTS RELATED TO past, current or future purchase of MR systems for use with

27  GBCAs, including OMNISCAN, to DECEDENT'S HEALTHCARE FACILITIES.

28

Exh. A
81

**REQUEST FOR PRODUCTION NO. 44:**

An organizational chart or other DOCUMENT showing YOUR corporate organization RELATED TO distribution, delivery and sales of GBCAS to DECEDENT'S HEALTHCARE FACILITIES.

Dated:  June 12, 2008                    LEVIN SIMES KAISER & GORNICK LLP

By: _____
        Debra DeCarli, Esq.

11

Exh. A
82

DISC-001

| |
|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Lawrence J. Gornick (SBN 136290)<br>Debra DeCarli (SBN 237642)<br>Levin Simes Kaiser & Gornick<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415)646-7160<br>FAX NO. *(Optional)*: (415) 981-1270<br>E-MAIL ADDRESS *(Optional)*: lgornick@lskg-law.com; ddecarli@lskg-law.<br>ATTORNEY FOR *(Name)*: Plaintiffs |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>Superior Court |
| SHORT TITLE OF CASE: Stondell v Bayer Healthcare Pharmaceuticals, Inc., et al |

| FORM INTERROGATORIES—GENERAL | CASE NUMBER |
|---|---|
| Asking Party: LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL<br>Answering Party: GENERAL ELECTRIC COMPANY<br>Set No.: ONE | CGC-08-476085 |

**Sec. 1.    Instructions to All Parties**

(a)    Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath.  The interrogatories below are form interrogatories approved for use in civil cases.

(b)    For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c)    These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2.    Instructions to the Asking Party**

(a)    These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000.  Separate interrogatories, *Form Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)    Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)    You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)    The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)    Additional interrogatories may be attached.

**Sec. 3.    Instructions to the Answering Party**

(a)    An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)    As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared.  See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)    Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)    If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)    Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response.  If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)    Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)    If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)    Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

———————————     ———————————
*(DATE)*                                              *(SIGNATURE)*

**Sec. 4.  Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a)  *(Check one of the following)*:

☐  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

**FORM INTERROGATORIES—GENERAL**

Legal Solutions Plus

Exh. A
83

X  (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b)  **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c)  **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d)  **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e)  **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f)  **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

CONTENTS

1.0  Identity of Persons Answering These Interrogatories
2.0  General Background Information—Individual
3.0  General Background Information—Business Entity
4.0  Insurance
5.0  *[Reserved]*
6.0  Physical, Mental, or Emotional Injuries
7.0  Property Damage
8.0  Loss of Income or Earning Capacity
9.0  Other Damages
10.0  Medical History
11.0  Other Claims and Previous Claims
12.0  Investigation — General
13.0  Investigation — Surveillance
14.0  Statutory or Regulatory Violations
15.0  Denials and Special or Affirmative Defenses
16.0  Defendant's Contentions Personal Injury
17.0  Responses to Request for Admissions
18.0  *[Reserved]*
19.0  *[Reserved]*
20.0  How the Incident Occurred—Motor Vehicle
25.0  *[Reserved]*
30.0  *[Reserved]*
40.0  *[Reserved]*
50.0  Contract
60.0  *[Reserved]*
70.0  Unlawful Detainer *[See separate form FI-128]*
101.0  Economic Litigation *[See separate form FI-129]*
200.0  Employment Law *[See separate form FI-130]*
      Family Law *[See separate form 1292.10]*

**1.0  Identity of Persons Answering These Interrogatories**

X  1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0  General Background Information—individual**

2.1 State:
(a)  your name;
(b)  every name you have used in the past; and
(c)  the dates you used each name.

2.2 State the date and place of your birth.

2.3 At the time of the **INCIDENT**, did you have a driver's license? If so, state:
(a)  the state or other issuing entity;
(b)  the license number and type;
(c)  the date of issuance; and
(d)  all restrictions.

2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a)  the state or other issuing entity;
(b)  the license number and type;
(c)  the date of issuance; and
(d)  all restrictions.

2.5 State:
(a)  your present residence **ADDRESS**;
(b)  your residence **ADDRESSES** for the past five years; and
(c)  the dates you lived at each **ADDRESS**.

2.6 State:
(a)  the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b)  the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

2.7 State:
(a)  the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b)  the dates you attended;
(c)  the highest grade level you have completed; and
(d)  the degrees received.

2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a)  the city and state where you were convicted;
(b)  the date of conviction;
(c)  the offense; and
(d)  the court and case number.

2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

Exh. A
84

DISC-001

2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON**? If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON**; and
(b) a description of your duties.

2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT**? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT**.

2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information — Business Entity**

[X] 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

[X] 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

[X] 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

[X] 4.1 At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS**, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

[X] 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

Exh. A
85

DISC-001

6.3 Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS**, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS**, and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT**? If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER**;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0 Property Damage**

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT**? If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS**, and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS**, and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS**, and telephone number of the **PERSON** who paid for the repair.

**8.0 Loss of Income or Earning Capacity**

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT**? (If your answer is "no," do not answer interrogatories 8.2 through 8.8).

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT**.

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT**.

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT**? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

Exh. A
86

DISC-001

### 9.0 Other Damages

9.1   Are there any other damages that you attribute to the **INCIDENT**? If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** to whom an obligation was incurred.

9.2   Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

### 10.0 Medical History

10.1   At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT**? If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

10.2   List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT**. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

10.3   At any time after the **INCIDENT**, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS**, and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

### 11.0 Other Claims and Previous Claims

11.1   Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS**, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

11.2   In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS**, and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS**, and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

### 12.0 Investigation—General

12.1   State the name, **ADDRESS**, and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT**;
(b) who made any statement at the scene of the **INCIDENT**;
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

12.2   Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT**? If so, for each individual state:
(a) the name, **ADDRESS**, and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who conducted the interview.

12.3   Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT**? If so, for each statement state:
(a) the name, **ADDRESS**, and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS**, and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original statement or a copy.

Exh. A
87

DISC-001

12.4 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;

(b) the places, objects, or persons photographed, filmed, or videotaped;

(c) the date the photographs, films, or videotapes were taken;

(d) the name, **ADDRESS**, and telephone number of the individual taking the photographs, films, or videotapes; and

(e) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

12.5 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the **INCIDENT**? If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);

(b) the subject matter; and

(c) the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

X  12.6 Was a report made by any **PERSON** concerning the **INCIDENT**? If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;

(b) the date and type of report made;

(c) the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

12.7 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**? If so, for each inspection state:

(a) the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and

(b) the date of the inspection.

**13.0 Investigation—Surveillance**

X  13.1 Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS**, and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

X  13.2 Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, **ADDRESS**, and telephone number of the individual who prepared the report; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

14.1 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**? If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

14.2 Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:

(a) the name, **ADDRESS**, and telephone number of the **PERSON**;

(b) the statute, ordinance, or regulation allegedly violated;

(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and

(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

X  15.1 Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**16.0 Defendant's Contentions—Personal Injury**

16.1 Do you contend that any **PERSON**, other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON**:

(a) state the name, **ADDRESS**, and telephone number of the **PERSON**;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.2 Do you contend that plaintiff was not injured in the **INCIDENT**? If so:

(a) state all facts upon which you base your contention;

(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

Exh. A

88

DISC-001

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**?  If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the INCIDENT?  If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable?  If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**?  If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**?  If so:
(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable?  If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case?  If so, for each plaintiff state:
(a) the source of each **DOCUMENT**;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)?  If so, for each plaintiff state:

(a) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER**;
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0  Responses to Request for Admissions**

17.1  Is your response to each request for admission served with these interrogatories an unqualified admission?  If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0**  *[Reserved]*

**19.0**  *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT**, state:
(a) the year, make, model, and license number;
(b) the name, **ADDRESS**, and telephone number of the driver;

Exh. A
89

DISC-001

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

20.3  State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

20.4  Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

20.5  State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

20.6  Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

20.7  Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT**.

20.8  State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT**;

(b) at the time of the **INCIDENT**; and

(c) just after the **INCIDENT**.

20.9  Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**?  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**?  If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

20.11 State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0  Contract**

50.1  For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

50.2  Was there a breach of any agreement alleged in the pleadings?  If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

50.3  Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

50.4  Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation?  If so, identify each agreement terminated, the date of termination, and the basis of the termination.

50.5  Is any agreement alleged in the pleadings unenforceable?  If so, identify each unenforceable agreement and state why it is unenforceable.

50.6  Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

Exh. A
90

*Stondell v Bayer Healthcare Pharmaceuticals, Inc., et al*
SFSC Case No. CGC-08-476085

## Attachment 4(a)(2)

INCIDENT includes the circumstances and events surrounding the testing and manufacture of gadolinium based contrast agents and the marketing, promotion, sale, and distribution of gadolinium based contrast agents and imaging equipment designed to be used with gadolinium based contrast agents to McKesson Corporation, Merry X-Ray Chemical Corporation, Ventura Coat Imaging Center and Community Memorial Hospital of San Buenaventura.

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Lawrence J. Gornick (SBN 136290)
Debra DeCarli (SBN 237642)
Levin Simes Kaiser & Gornick
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
 TELEPHONE NO. (415)646-7160    FAX NO. (415) 981-1270
ATTORNEY FOR *(Name)*: Plaintiffs

FOR COURT USE ONLY

**ENDORSED
F I L E D**
Superior Court of California
County of San Francisco

**JUN 0 6 2008**

**GORDON PARK-LI, Clerk**
BY: _____ DEBORAH STEPPE _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
 STREET ADDRESS 400 McAllister Street
 MAILING ADDRESS
 CITY AND ZIP CODE San Francisco, CA 94102
 BRANCH NAME

CASE NAME: Stondell v Bayer Healthcare
Pharmaceuticals, Inc., et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER **CGC-08-476085** |
|---|---|---|---|
| X Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | Counter    Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE |
| | | | DEPT |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- X Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Rule 3.740 collections (09)
- Other collections (09)
- Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/Inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)
- Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- Antitrust/Trade regulation (03)
- Construction defect (10)
- Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*:  EIGHT
5. This case [ ] is [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 6/5/08

Lawrence J. Gornick (SBN 136290)
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**
Legal
Solutions
& Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Exh. A
92

CASE NUMBER: CGC-08-476085  LORRAINE ELLEN JOHNSON et al VS. BAYER HEALTHCA

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

|   |   |
|---|---|
| **DATE:** | **NOV-07-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
|   | **400 McAllister Street** |
|   | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.** (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

Exh. A
93

**CT** CORPORATION
A WoltersKluwer Company



**Service of Process Transmittal**
06/16/2008
CT Log Number 513534483



TO:     Deb Missell
        GE Healthcare Inc.
        101 Carnegie Center
        Princeton, NJ 08540-6231

RE:     **Process Served in California**

FOR:    GE Healthcare Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Lorraine Ellen Johnson and Robert Gary Stondell, individually, an as Successors in Interest to the estate of Doris Lorraine Stondell, Deceased, Pltfs. vs. Bayer Healthcare Pharmaceuticals, Inc., et al. including GE Healthcare, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Affidavit, Declaration, Exhibit(s), Stipulation Form, Special Interrogatories, Attachment(s), Cover Sheet, Notice to Plaintiff |
| **COURT/AGENCY:** | San Francisco County- San Francisco, Superior Court, CA Case # CGC08476085 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Wrongful Death - Failure to Warn - Gadolinium-based contrast agents |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/16/2008 at 11:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // 11/07/08 at 9:00 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Lawrence J. Gornick Levin Simes Kaiser & Gornichk 44 Montgomery Street 36th Floor San Francisco, CA 94104 415 646 7160 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 791087727516 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / WM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exh. A
94

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

6/16

11 Am    30

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Bayer Healthcare Pharmaceuticals, Inc.; Bayer
Healthcare LLC; Bayer Schering Pharma AG; General
Electric Company; GE Healthcare AS; GE Healthcare,
Inc.; Mallinckrodt, Inc.; Bracco Diagnostics, Inc.;
McKesson Corporation; Merry X-Ray Chemical Corp.; and
Does 1 through 35

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Lorraine Ellen Johnson and Robert Gary Stondell,
individually, and as Successors in Interest to the
Estate of Doris Lorraine Stondell, Deceased

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response.  You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court<br>400 McAllister Street<br><br>San Francisco, CA 94102 | CASE NUMBER<br>*(Número del Caso):*<br>CGC-08-476085 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence J. Gornick (SBN 136290)          (415)646-7160    (415) 981-1270
Levin Simes Kaiser & Gornick
44 Montgomery Street, 36th Floor
San Francisco, CA 94104

DATE:                                Clerk, by                                , Deputy
*(Fecha)*  **JUN 0 6 2008  GORDON PARK-LI**  *(Secretario)*  **D. STERRE**  *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* GE HEALTHCARE, INC

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                          Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**


Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

Exh. A
95

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
7  Attorneys for Plaintiffs

8

ENDORSED
**F I L E D**
Superior Court of California
County of San Francisco

JUN 0 6 2008

**GORDON PARK-LI, Clerk**
BY: _____DEBORAH STEPPE_____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

NOV 0 7 2008 - 9:00 AM

DEPARTMENT 212

## SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION

## COUNTY OF SAN FRANCISCO

10  LORRAINE ELLEN JOHNSON and ROBERT
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                    Plaintiffs,
13
        vs.
14
    BAYER HEALTHCARE
15  PHARMACEUTICALS, INC.; BAYER
    HEALTHCARE LLC; BAYER SCHERING
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35
20
                    Defendants.
21

Case No: **CGC-08-476085**

COMPLAINT FOR DAMAGES DUE TO:

1) **STRICT LIABILITY: FAILURE TO
   WARN (All Defendants);**
2) **NEGLIGENCE (All Defendants);**
3) **FRAUD: MISREPRESENTATION
   (Manufacturing Defendants);**
4) **FRAUD: CONCEALMENT,
   SUPPRESSION OR OMISSION OF
   MATERIAL FACTS (Manufacturing
   Defendants);**
5) **NEGLIGENT
   MISREPRESENTATION
   (Manufacturing Defendants);**
6) **VIOLATION OF CONSUMERS
   LEGAL REMEDIES ACT (All
   Defendants);**
7) **WRONGFUL DEATH (All
   defendants); and**
8) **SURVIVAL ACTION (All Defendants)**

23

24      Plaintiffs, Lorraine Ellen Johnson and Robert Gary Stondell, (hereinafter "Plaintiffs"),
25  surviving children and successors in Interest to the Estate of Doris Lorraine Stondell, (hereinafter
26  "Decedent") allege as follows:
27  ///
28  ///

- 1 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
96

**PARTIES**

*Plaintiffs*

1.       Lorraine Ellen Johnson and Robert Gary Stondell, are residents of the State of California. They are the sole heirs and executors of the estate of Doris Lorraine Stondell, who died on December 27, 2005. Plaintiffs are the decedent's successors in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the decedent's interest.

2.       Decedent Doris Lorraine Stondell was diagnosed with and died of nephrogenic systemic fibrosis ("NSF"). NSF is an incurable, painful and deadly disease. Decedent contracted NSF as a result of receiving MRIs and MRAs using intravenous injections of gadolinium-based contrast agents.

*Manufacturing Defendants*

3.       Defendants Bayer Schering Pharma AG, Bayer HealthCare Pharmaceuticals, Inc. and Bayer Healthcare LLC (collectively referred to as "Bayer") manufacture, market and sell Magnevist, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

4.       Defendant Bayer HealthCare LLC, a division of Bayer AG, is a Delaware business entity with its principal place of business in New York.

5.       Bayer HealthCare LLC is duly authorized to conduct business in the State of California and does business in San Francisco County.

6.       Bayer Schering Pharma AG is a foreign company domiciled in Germany. Bayer Schering Pharma AG is engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing Magnevist into interstate commerce, either directly or indirectly through third parties or related entities.

7.       Defendant Bayer HealthCare Pharmaceuticals, Inc. is a Delaware business entity with its principal place of business in New Jersey. Defendant Bayer HealthCare Pharmaceuticals, Inc. is the U.S.-based pharmaceuticals unit of Bayer Healthcare LLC.

8.       Bayer HealthCare Pharmaceuticals, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
97

9.     At all times relevant to this complaint, Bayer advertised, promoted, marketed, distributed and sold Magnevist in San Francisco County.

10.     Defendants General Electric Company, GE Healthcare, Inc. and GE Healthcare AS (collectively referred to as "GE") manufacture and sell Omniscan, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

11.     Defendant General Electric Company is a New York business entity with its principal place of business in Connecticut.

12.     General Electric Company is duly authorized to conduct business in the State of California and does business in San Francisco County.

13.     Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of business in New Jersey.

14.     GE Healthcare, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

15.     GE Healthcare AS is a foreign company domiciled in Norway.  GE Healthcare AS is engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing Omniscan into interstate commerce, either directly or indirectly through third parties or related entities.

16.     At all times relevant to this complaint, GE advertised, promoted, marketed, distributed and sold Omniscan and its MRI and MRA machines in San Francisco County.

17.     Defendant Mallinckrodt, Inc. manufactures, distributes and sells OptiMARK, a gadolinium-based contrast agent that, on information and belief, was injected into Decedent.

18.     Defendant Mallinckrodt, Inc. is a Delaware corporation with its principal place of business in Missouri.

19.     Mallinckrodt, Inc. is duly authorized to conduct business in the State of California and does business in San Francisco County.

20.     At all times relevant to this complaint, Mallinckrodt advertised, promoted, marketed, distributed and sold OptiMARK in San Francisco County.

21.     Defendant Bracco Diagnostics, Inc. ("Bracco") manufactures, sells and distributes

- 3 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
98

1    MultiHance and ProHance, gadolinium-based contrast agents that, on information and belief, were
2    injected into Decedent.

3        22.    Bracco Diagnostics, Inc. is a Delaware corporation with its principal place of business
4    in New Jersey.

5        23.    Bracco Diagnostics, Inc. is duly authorized to conduct business in the State of
6    California and does business in San Francisco County.

7        24.    At all times relevant to this complaint, Bracco advertised, promoted, marketed,
8    distributed and sold MultiHance and ProHance in San Francisco County.

9        25.    The true names and capacities of those Defendants designated as Does 1-15 are
10   unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 1-15 manufactured
11   gadolinium-based contrast agents that were injected into Decedent and/or manufactured MRI and
12   MRA machines with which MRIs and/or MRAs were performed on Decedent using gadolinium-based
13   contrast agents.  Plaintiffs allege on information and belief that each of these fictitiously named
14   defendants bears legal responsibility for the events and damages set forth in this complaint.

15       26.    Plaintiffs allege on information and belief that Does 1-15 were and are companies
16   authorized to do and doing business in the State of California and have regularly conducted business in
17   the County of San Francisco, State of California.

18       27.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named
19   Defendant when they have been ascertained.

20       28.    The Bayer, GE, Mallinckrodt and Bracco Defendants, along with Does 1-15, are
21   collectively referred to as the Manufacturing Defendants.

22   *Distributor Defendants*

23       29.    Defendant McKesson Corporation distributes Omniscan and, on information and belief,
24   other gadolinium-based contrast agents.  Plaintiffs allege on information and belief that McKesson
25   distributed the Omniscan and/or other gadolinium-based contrast agents that were injected into
26   Decedent.

27       30.    Defendant McKesson Corporation is a Delaware corporation with its principal place of
28   business at One Post Street, San Francisco, California.

- 4 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

31.    McKesson Corporation is duly authorized to conduct business in the State of California and does business in San Francisco County.

32.    At all times relevant to this complaint, on information and belief, McKesson sold Omniscan and/or other gadolinium-based contrast agents in San Francisco County.

33.    Defendant Merry X-Ray Chemical Corporation distributes Magnevist and/or other gadolinium-based contrast agents.  Plaintiffs allege on information and belief that Merry X-Ray distributed the Magnevist and/or other gadolinium-based contrast agents that were injected into Decedent.

34.    Defendant Merry X-Ray Chemical Corporation is a California corporation with its principal place of business at 4444 Viewridge Avenue, San Diego, California.

35.    Merry X-Ray Chemical Corporation is duly authorized to conduct business in the State of California and does business in San Francisco County.

36.    At all times relevant to this complaint, Merry X-Ray sold Magnevist and/or other gadolinium-based contrast agents in San Francisco County.

37.    The true names and capacities of those Defendants designated as Does 16-35 are unknown to Plaintiffs.  Plaintiffs allege on information and belief that Does 16-35 distributed gadolinium-based contrast agents that were injected into Decedent.  Plaintiffs allege on information and belief that each of these fictitiously named Defendants bears legal responsibility for the events and damages set forth in this Complaint.

38.    Plaintiffs allege on information and belief that Does 16-35 were and are companies authorized to do and doing business in the State of California and have regularly conducted business in the County of San Francisco, State of California.

39.    Plaintiffs will amend this Complaint to show the identity of each fictitiously named defendant when they have been ascertained.

40.    McKesson and Merry X-Ray, along with Does 16-35, are collectively referred to as the Distributor Defendants.

41.    The Manufacturing Defendants and the Distributor Defendants are collectively referred to as Defendants.

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
100

**FACTS**

42.     Decedent was diagnosed with chronic renal insufficiency and end stage renal disease. Between the months of August and September of 2005, she was subjected to multiple injections of gadolinium-based contrast agents for MRI and MRA procedures. Shortly thereafter, she began to suffer from symptoms of Nephrogenic Systemic Fibrosis ("NSF"), also known as Nephrogenic Fibrosing Dermopathy ("NFD"), and was officially diagnosed in or around the end of November 2005. The disease progressed rapidly until it caused her death approximately one month later on December 27, 2005.

43.     NSF is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin after receiving a gadolinium-based contrast agent injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints. The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement. NSF also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature, and that can inhibit their ability to function properly and may lead to death. NSF is a progressive disease for which there is no known cure.

44.     NSF is a man-made disease. It only occurs in patients who have received a gadolinium-based contrast agent for an MRI or an MRA.

45.     Gadolinium is a highly toxic heavy metal. It does not occur naturally in the human body. The only known route for gadolinium to enter the human body is injection of a gadolinium-based contrast agent.

46.     Because gadolinium is toxic, it has to be coated to keep it from coming in contact with human tissue when used in connection with MRIs or MRAs. This coating process is called chelation.

47.     Gadolinium is eliminated from the body by the kidneys. Gadolinium-based contrast agents are not safe if the chelate separates from the gadolinium, which is what happens over time if kidneys are not functioning properly. Individuals with impaired kidney function risk dechelation and cannot efficiently or quickly eliminate gadolinium from their bodies. The Manufacturing Defendants

- 6 -

1    never tested the safety of their gadolinium-based contrast agents in individuals with kidney

2    impairment.

3        48.    On information and belief, the gadolinium-based contrast agents injected into Decedent

4    were manufactured by the Manufacturing Defendants and distributed by the Distributor Defendants.

5        49.    In pre-clinical studies during which gadolinium-based contrast agents were injected into

6    laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the

7    kidneys and other body organs occurred.

8        50.    During the years that Defendants have manufactured, marketed, distributed, sold and

9    administered gadolinium-based contrast agents, there have been numerous case reports, studies,

10    assessments, papers, and other clinical data that have described and/or demonstrated NSF in

11    connection with the use of gadolinium-based contrast agents.

12        51.    Decedent received MRIs and/or MRAs utilizing gadolinium-based contrast agents.

13        52.    Decedent had impaired kidney function at the time she received her first injection of

14    gadolinium-based contrast agent and continued to have impaired kidney function at the time she

15    received each subsequent injection of gadolinium-based contrast agent.

16        53.    During the time period when Decedent received injections of the Manufacturing

17    Defendants' gadolinium-based contrast agents, Defendants knew or should have known that the use of

18    gadolinium-based contrast agents created a risk of serious bodily injury and death in patients with

19    impaired kidney function.

20        54.    Defendants failed to warn Decedent and her healthcare providers about the serious

21    health risks associated with gadolinium-based contrast agents, and failed to disclose the fact that there

22    were safer alternatives.

23        55.    As a direct and proximate result of receiving injections of gadolinium-based contrast

24    agents manufactured, distributed, marketed and/or sold by Defendants, Decedent developed NSF.

25        56.    Defendants have repeatedly and consistently failed to advise consumers and/or their

26    healthcare providers of the causal relationship between gadolinium-based contrast agents and NSF in

27    patients with renal insufficiency.  Defendants knew or should have known of the risk of NSF posed by

28    gadolinium-based contrast agents to individuals with impaired kidney function years before they

- 7 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
102

1  finally issued warnings.

2      57.    It was not until September 2007 that Bayer, GE, Bracco and Mallinckrodt finally sent

3  letters to healthcare providers warning them of the risk of NSF to kidney impaired individuals who

4  received MRIs using gadolinium-based contrast agents.

5      58.    Had Decedent and/or her healthcare providers been warned about the risks associated

6  with gadolinium-based contrast agents, Decedent would not have been administered gadolinium-based

7  contrast agents, would not have been afflicted with NSF, and would not have died.

8      59.    As a direct and proximate result of Decedent being administered gadolinium-based

9  contrast agents, she suffered severe physical injury and pain and suffering, including, but not limited

10  to, the effects of NSF which progressively worsened until it caused her death.

11      60.    As a direct and proximate result of being administered gadolinium-based contrast

12  agents, Decedent suffered significant mental anguish and emotional distress until her death.

13      61.    As a direct and proximate result of being administered gadolinium-based contrast

14  agents, Decedent incurred medical expenses and other economic damages.

15      62.    As a direct and proximate result of decedent's death, Plaintiffs, as the executors and

16  successors in interest of the estate, have suffered a permanent and substantial loss of Decedent's love,

17  companionship, comfort, care, assistance, protection, affection, society, moral support and training and

18  guidance as well as pecuniary loss, monies, income, earnings and services and the deprivation of such

19  pecuniary benefits in the future as would have been occasioned by the continued life of the Decedent.

20  Plaintiffs also incurred expenses of Decedent's illness, funeral and burial expenses.

21            **DISCOVERY RULE & FRAUDULENT CONCEALMENT**

22

23      63.    The discovery rule should be applied to toll the running of the statute of limitations

24  until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of

25  the existence of their claims against all Defendants.  The nature of Decedent's injuries and damages,

26  and their relationship to gadolinium-based contrast agents used in conjunction with MRIs and MRAs,

27  was not discovered, and through reasonable care and due diligence could not have been discovered, by

28  Plaintiffs, until a time less than two years before the filing of this Complaint.  It was not until

- 8 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1  September 2007 that Bayer, GE, Bracco and Mallinckrodt finally sent letters to healthcare providers

2  warning them of the risk of NSF to kidney impaired individuals who received MRIs using gadolinium-

3  based contrast agents. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit

4  was filed well within the applicable statutory limitations period.

5       64.    Defendants are estopped from asserting a statute of limitations defense because all

6  Defendants fraudulently concealed from Plaintiffs the nature of Decedent's injury and the connection

7  between the injury and all Defendants' tortious conduct.

8
## FIRST CAUSE OF ACTION
9
**(Against All Defendants)**
**STRICT LIABILITY: FAILURE TO WARN**
10
     65.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

11       66.    Defendants' gadolinium-based contrast agents, and MRI and MRA machines designed

12  to be used in conjunction with gadolinium-based contrast agents, were defective due to inadequate

13  warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or

14  should have known that their products created significant risks of serious bodily harm and death to

15  consumers. Defendants failed to adequately warn consumers and their healthcare providers of such

16  risks.

17       67.    Because of Defendants' failure to provide adequate warnings with their products,

18  Decedent was injected with gadolinium-based contrast agents which the Defendants manufactured,

19  designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Those

20  gadolinium-based contrast agents were the legal cause of Decedent's serious physical injuries, harm,

21  damages, economic loss, and death, and of Plaintiffs' damages as set forth below.

22
23
## SECOND CAUSE OF ACTION
24
**(Against All Defendants)**
**NEGLIGENCE**
25       68.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

26       69.    Defendants had a duty to exercise reasonable care in the design, formulation, testing,

27  manufacture, labeling, marketing, sale and/or distribution of gadolinium-based contrast agents and the

28  MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast agents.

- 9 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

1   In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily

2   harm and adverse events.

3       70.    Defendants failed to exercise reasonable care in the design, formulation, manufacture,

4   sale, testing, marketing, or distribution of gadolinium-based contrast agents and the MRI and MRA

5   machines designed to be used in conjunction with gadolinium-based contrast agents in that they knew

6   or should have known that the products could cause significant bodily harm or death and were not safe

7   for use by certain types of consumers.

8       71.    Defendants failed to exercise ordinary care in the labeling of gadolinium-based contrast

9   agents and the labeling of MRI and MRA machines designed to be used in conjunction with

10  gadolinium-based contrast agents and failed to issue to consumers and their health care providers

11  adequate warnings concerning the risks of serious bodily injury or death due to the use of gadolinium-

12  based contrast agents and the MRI and MRA machines designed to be used in conjunction with

13  gadolinium-based contrast agents.

14      72.    Despite the fact that Defendants knew or should have known that gadolinium-based

15  contrast agents and the MRI and MRA machines designed to be used in conjunction with gadolinium-

16  based contrast agents posed a serious risk of bodily harm to consumers, Manufacturing and Distributor

17  Defendants unreasonably continued to manufacture and market gadolinium-based contrast agents and

18  the MRI and MRA machines designed to be used in conjunction with gadolinium-based contrast

19  agents for administration to MRI and MRA patients with renal insufficiency and failed to exercise

20  reasonable care with respect to post-sale warnings and instructions for safe use.

21      73.    At all relevant times, it was foreseeable to Defendants that consumers like Decedent

22  would suffer injury as a result of their failure to exercise ordinary care as described above.

23      74.    As a direct and proximate result of Defendants' negligence, Decedent suffered physical

24  injuries, harm, damages and economic loss, and death, and resulted in Plaintiffs' damages as set forth

25  below.

26      75.    The foregoing acts, conduct and omissions of Defendants were vile, base, willful,

27  malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the

28

- 10 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

health, safety and rights of Decedent and other users of Defendants' products, and for the primary purpose of increasing Defendants' profits. As such, Plaintiffs are entitled to exemplary damages.

### THIRD CAUSE OF ACTION
### (Against Manufacturing Defendants)
### FRAUD

76.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

77.    Manufacturing Defendants knowingly and intentionally made materially false and misleading representations to Decedent's healthcare providers and to the public, to the effect that gadolinium-based contrast agents were safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

78.    Manufacturing Defendants' representations were in fact false. Gadolinium-based contrast agents are not safe for use and Defendants' labeling, marketing and promotional materials did not fully describe all known risks of the products.

79.    Manufacturing Defendants had actual knowledge that gadolinium-based contrast agents created an unreasonable risk of serious bodily injury and death to consumers, especially patients with renal impairment.

80.    Manufacturing Defendants knowingly and intentionally omitted this information from their labeling, marketing, and promotional materials and instead, labeled, promoted and marketed their products as safe for use in order to increase and sustain sales.

81.    When Manufacturing Defendants made representations that gadolinium-based contrast agents were safe for use, they knowingly and intentionally concealed and withheld from Decedent, her physicians and the public, the fact that their gadolinium-based contrast agents are not safe for use in consumers with renal insufficiency.

82.    Manufacturing Defendants had a duty to disclose that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency. Manufacturing Defendants had superior knowledge of these facts that were material to Decedent and her healthcare providers' decisions to use gadolinium-based contrast agents.

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
106

83.    Decedent and her healthcare providers reasonably and justifiably relied on the Manufacturing Defendants' representations that gadolinium-based contrast agents were safe for human use and that Manufacturing Defendants' labeling, marketing and promotional materials fully described all known risks associated with the products.

84.    Plaintiffs and Decedent did not know, and could not have learned of the facts that the Defendants omitted and suppressed.  The facts suppressed and concealed by the Defendants are material.  Had Decedent and her healthcare providers known that gadolinium-based contrast agents are not safe for use in patients with renal insufficiency, Decedent would not have been injected with gadolinium-based contrast agents.

85.    As a direct and proximate result of Manufacturing Defendants' misrepresentations and concealment, Decedent was administered gadolinium-based contrast agents and suffered serious physical injury, harm, damages and economic loss and death, and resulted in Plaintiffs' damages as set forth below.

86.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile, base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard for the health, safety and rights of Decedent and other users of Manufacturing Defendants' products, and for the primary purpose of increasing Manufacturing Defendants' profits.  As such Plaintiffs are entitled to exemplary damages.

## FOURTH CAUSE OF ACTION
### (Against Manufacturing Defendants)
## FRAUD: CONCEALMENT, SUPPRESSION OR OMISSION OF MATERIAL FACTS

87.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

88.    Manufacturing Defendants omitted, suppressed, or concealed material facts concerning the dangers and risk associated with the use of their gadolinium-based contrast agents, including but not limited to the risks to patients with kidney impairment of developing NSF, and the fact that safer alternatives were available.  Further, Manufacturing Defendants purposely downplayed and

- 12 -
COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
107

1 understated the serious nature of the risks associated with use of their gadolinium-based contrast

2 agents in order to increase and sustain sales.

3      89.    As a direct and proximate result of Manufacturing Defendants' concealment of material

4 facts, Decedent was administered gadolinium-based contrast agents and suffered physical injury, harm,

5 damages and economic loss and death, and resulted in Plaintiffs' damages as set forth below.

6      90.    The foregoing acts, conduct and omissions of Manufacturing Defendants were vile,

7 base, willful, malicious, wanton, oppressive and fraudulent, and were done with a conscious disregard

8 for the health, safety and rights of Decedent and other users of Manufacturing Defendants' products,

9 and for the primary purpose of increasing Manufacturing Defendants' profits. As such Plaintiffs are

10 entitled to exemplary damages.

11
### FIFTH CAUSE OF ACTION
**(Against Manufacturing Defendants)**
12 **NEGLIGENT MISREPRESENTATION**

13      91.    Plaintiffs incorporate by reference and reallege each paragraph set forth above.

14      92.    Manufacturing Defendants supplied the public and Decedent's healthcare providers

15 with materially false and incomplete information with respect to the safety of their gadolinium-based

16 contrast agents.

17      93.    The false information supplied by Manufacturing Defendants was that gadolinium-

18 based contrast agents were safe.

19      94.    In supplying this false information, Manufacturing Defendants failed to exercise

20 reasonable care.

21      95.    The false information communicated by Defendants to Decedent and her healthcare

22 providers was material and Decedent justifiably relied in good faith on the information to her

23 detriment.

24      96.    As a direct and proximate result of Defendants' misrepresentations, Decedent was

25 administered gadolinium-based contrast agents and has suffered physical injury, harm, damages and

26 economic loss, and death, and resulted in Plaintiffs' damages as set forth below.

27

28

COMPLAINT FOR DAMAGES AND JURY DEMAND

Exh. A
108

### SIXTH CAUSE OF ACTION
#### (Against All Defendants)
### CONSUMERS LEGAL REMEDIES ACT

97.     Plaintiffs incorporate by reference and reallege each paragraph set forth above.

98.     This Complaint is filed and these proceedings are instituted, pursuant to California Civil Code section 1750, *et seq,* commonly referred to as the Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief, any other relief this Court deems proper, and attorneys' fees from Defendants.

99.     Among others, Defendants' conduct is in violation of California Civil Code section 1770(5), 1770(7) and 1770(9). Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of California Civil Code section 1750, *et seq,* including but not limited to the following:

    a.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses by impliedly representing that such products are approved for use with MRAs and other off-label uses, when in fact there is no such approval;

    b.  Representing that gadolinium-based contrast agents are safe and effective for all patients, including patients with kidney impairment, when in fact they are not;

    c.  Representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents when in fact they are not;

    d.  Marketing, promoting or selling their products as safer or superior to other brands of gadolinium-based contrast agents;

    e.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect;

    f.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs or other off-label uses by expressly or impliedly representing that they are safe for such use; and

- 14 -

g.  Remaining silent despite their knowledge of the growing body of evidence regarding the danger of NSF and doing so because the prospect of huge profits outweighed health and safety issues.

100.  Plaintiffs demand that Defendants immediately cease the illegal conduct alleged herein.

101.  The illegal conduct alleged herein is continuing and there is no indication that Defendants will refrain from such activity in the future.

102.  Plaintiffs are entitled to injunctive relief and any other relief this Court deems proper, and attorneys' fees from Defendants as a result of such acts or practices.

## SEVENTH CAUSE OF ACTION
### (Against all Defendants)
### WRONGFUL DEATH

103.  Plaintiffs incorporate by reference and reallege each paragraph set forth above.

104.  As a proximate result of the conduct of Defendants, as described above, Decedent suffered from death, personal injuries and other economic and noneconomic damages.

105.  Pursuant to Section 377.60 of the California Code of Civil Procedure, decedent's surviving children may pursue a wrongful death cause of action in this case.

## EIGHTH CAUSE OF ACTION
### (Against all Defendants)
### SURVIVAL ACTION

106.  Plaintiffs incorporate by reference and reallege each paragraph set forth above.

107.  Prior to her death, Decedent had a cause of action against Defendants herein for personal injuries arising from her injection of gadolinium based contrast agents. After the foregoing causes of action arose in her favor, Decedent, who would have been the plaintiff in this action if she had lived, died.

108.  As a proximate result of the conduct of Defendants, as described above, Decedent suffered from death, personal injuries and other economic and noneconomic damages.

109.  Pursuant to Section 377.60 of the California Code of Civil Procedure, decedent's surviving children may pursue a wrongful death cause of action in this case.

- 15 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For an injunction prohibiting Defendants from engaging in the following conduct which violates the CLRA:

    a.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance for use with MRAs and other off-label uses;

    b.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as safe and effective for patients with kidney impairment;

    c.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as by representing that MRIs and MRAs using gadolinium-based contrast agents are safer or more effective than other imaging methods that do not require the use of gadolinium-based contrast agents;

    d.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance in any way which implies that those products are safer or superior to other brands of gadolinium-based contrast agents;

    e.  Marketing, promoting or selling Magnevist, Omniscan, OptiMark, MultiHance or ProHance as inert or with words to that effect.

2.    Compensatory damages in excess of the jurisdictional amount, including, but not limited to loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, moral support and training and guidance and other non-economic damages in an amount to be determined at trial of this action;

3.    Past medical expenses, income, burial and funeral expenses, and other economic damages in an amount to be determined at trial of this action;

4.    Punitive damages in an amount to be determined at trial of this action;

5.    Pre- and post-judgment interest;

6.    Attorneys' fees, expenses, and costs; and

7.    Such further relief as this Court deems necessary, just, and proper.

- 16 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

1   Respectfully submitted this 5th day of June 2008.

2

3                                    LEVIN SIMES KAISER & GORNICK LLP

4

5                                    By: _____
                                         Lawrence J. Gornick, Esq.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

COMPLAINT FOR DAMAGES AND JURY DEMAND

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 0 6 2008

GORDON PARK-LI, Clerk
BY: _____ DEBORAH STEPPE
Deputy Clerk

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8        **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                      **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT       | Case No: **CGC-08-476085**
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12
                    Plaintiffs,              | **AFFIDAVIT OF VENUE**
13      vs.

14  BAYER HEALTHCARE
    PHARMACEUTICALS, INC.; BAYER
15  HEALTHCARE LLC; BAYER SCHERING
    PHARMA AG; GENERAL ELECTRIC
16  COMPANY; GE HEALTHCARE AS; GE
    HEALTHCARE, INC.; MALLINCKRODT,
17  INC.; BRACCO DIAGNOSTICS, INC.;
    McKESSON CORPORATION; MERRY X-
18  RAY CHEMICAL CORP.; and DOES 1
    through 35
19
20                  Defendants.
21

22      I, Lawrence J. Gornick, declare as follows:

23      1.      I am an attorney at law licensed to practice before this Court and a partner with the law

24  firm of Levin Simes Kaiser & Gornick LLP, attorneys of record for the Plaintiffs herein.

25      2.      On information and belief, at all times relevant herein, Defendants Bayer Healthcare

26  Pharmaceuticals, Inc.; Bayer Healthcare LLC; Bayer Schering Pharma AG; General Electric

27  Company; GE Healthcare AS; GE Healthcare, Inc.; Mallinckrodt, Inc.; Bracco Diagnostics, Inc.;

28

                                    - 1 -
                              AFFIDAVIT OF VENUE

1   McKesson Corporation; and Merry X-Ray Chemical Corp. were and are doing business in the City and

2   County of San Francisco.

3       3.     Based on the foregoing and pursuant to California Civil Code § 1780(c), this action

4   may be commenced in the Superior Court, Unlimited Jurisdiction of the City and County of San

5   Francisco.

6       I declare under penalty of perjury according to the laws of the State of California that the

7   foregoing is true and correct. Executed this 5th day of June 2008 in San Francisco, California

8

9

10

11   Lawrence J. Gornick, Esq.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

AFFIDAVIT OF VENUE

Exh. A
114

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Lawrence J. Gornick (SBN 136290)
Debra DeCarli (SBN 237642)
Levin Simes Kaiser & Gornick
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
TELEPHONE NO. (415)646-7160    FAX NO. *(Optional)* (415) 981-1270
E-MAIL ADDRESS *(Optional)*: lgornick@lskg-law.com; ddecarli@lskg-l
ATTORNEY FOR *(Name)*: Plaintiffs

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 06 2008

GORDON PARK-LI, Clerk
BY: _____ DEBORAH STEPPE _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Lorraine Ellen Johnson, et al

DEFENDANT/RESPONDENT: Bayer Healthcare Pharmaceuticals, Inc., et al

CASE NUMBER:
CGC-08-476085

JUDICIAL OFFICER

| NOTICE OF RELATED CASE | DEPT |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Gerber v Bayer Corporation, et al
   b. Case number: CGC-07-468577
   c. Court: [X] same as above
      [ ] other state or federal court *(name and address):*

   d. Department: 304
   e. Case type: [ ] limited civil  [X] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

   f. Filing date: October 26, 2007
   g. Has this case been designated or determined as "complex?"  [X] Yes  [ ] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [ ] involves the same parties and is based on the same or similar claims.
      [X] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [X] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [X] pending
      [ ] dismissed  [ ] with  [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title: Parker v Bayer Healthcare Pharmaceuticals, Inc., et al
   b. Case number: CGC-08-475968
   c. Court: [X] same as above
      [ ] other state or federal court *(name and address):*

   d. Department:

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Legal
Solutions
Plus

Cal. Rules of Court, rule 3.300

Exh. A
115

CM-015

| PLAINTIFF/PETITIONER: Lorraine Ellen Johnson, et al | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: Bayer Healthcare Pharmaceuticals, Inc., et al | |

2. *(continued)*

   e. Case type: ☐ limited civil ☒ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

   f. Filing date: June 4, 2008

   g. Has this case been designated or determined as "complex?" ☐ Yes ☒ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☒ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☒ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 6/5/08

Lawrence J. Gornick, Esq.
    (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
      (SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Page 2 of 3

Exh. A
116

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 0 6 2008

GORDON PARK-LI, Clerk
BY: _____ DEBORAH STEPPE
                    Deputy Clerk

1 | Lawrence J. Gornick (SBN 136290)
2 | Debra DeCarli (SBN 237642)
  | Laura Brandenberg (SBN 238642)
3 | **LEVIN SIMES KAISER & GORNICK LLP**
  | 44 Montgomery Street, 36th Floor
4 | San Francisco, CA 94104
  | Telephone: (415) 646-7160
5 | Fax: (415) 981-1270
  | lgornick@lskg-law.com
6 | ddecarli@lskg-law.com
  | lbrandenberg@lskg-law.com
7 | Attorneys for Plaintiffs

8 | **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9 | **COUNTY OF SAN FRANCISCO**

10 | LORRAINE ELLEN JOHNSON and ROBERT | Case No:
11 | GARY STONDELL, individually, and as
   | Successors in Interest to the Estate of DORIS | **CGC-08-476085**
12 | LORRAINE STONDELL, Deceased,

13 |       Plaintiffs,
   | vs.

14 | BAYER HEALTHCARE | **DECLARATION OF ROBERT STONDELL**
15 | PHARMACEUTICALS, INC.; BAYER | **RE SUCCESSOR-IN-INTEREST**
   | HEALTHCARE LLC; BAYER SCHERING | **PURSUANT TO §377.11**
16 | PHARMA AG; GENERAL ELECTRIC
   | COMPANY; GE HEALTHCARE AS; GE
17 | HEALTHCARE, INC.; MALLINCKRODT,
   | INC.; BRACCO DIAGNOSTICS, INC.;
18 | McKESSON CORPORATION; MERRY X-
   | RAY CHEMICAL CORP.; and DOES 1
19 | through 35

20 |       Defendants.

I, the undersigned hereby declare:

1.     I, ROBERT STONDELL, am over the age of 18 years.

2.     The name of the decedent is DORIS LORRAINE STONDELL (hereinafter "Decedent").

3.     The Decedent died in Ventura County, California on December 27, 2005.

- 1 -

DECLARATION OF ROBERT STONDELL RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11

1    4.      No proceeding is now pending in California for the administration of the Decedent's

2    estate.

3    5.      I am one of the Decedent's successors in interest (as defined in Section 377.11 of the

4    California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding.

5    I am the Decedents' surviving son.

6    6.      No other person has a superior right to commence the action or proceeding or to be

7    substituted for the Decedent in the pending action or proceeding.

8    7.      A certified copy of the decedent's Certificate of Death is attached hereto as Exhibit A.

9    I declare under penalty of perjury under the laws of the State of California that the foregoing is

10   true and correct.  Executed this 5th day of June 2008 at _Stinson Beach_, California.

11

12   _Robert Stondell_

13   Robert Stondell

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

DECLARATION OF ROBERT STONDELL RE SUCCESSOR IN INTEREST PURSUANT TO 377.11

**EXHIBIT A**

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF VENTURA
### VENTURA, CALIFORNIA

**CERTIFICATE OF DEATH**   3200556004429

| | |
|---|---|
| Name of Decedent: | Doris Lorraine Stondell |
| Date of Birth: | 12/20/1925 | Age: 80 | Sex: F |
| Birth State/Country: | PA |
| Social Security Number: | 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 |
| Marital Status: | Widowed |
| Date of Death: | 12/27/2005 | Hour: 1510 |
| Education: | Some College |
| Race: | Caucasian |
| Usual Occupation: | Homemaker |
| Kind of Business/Industry: | Homemaking |
| Years in Occupation: | 50 |

**Residence:** 2500 N. Ponderosa Drive, Camarillo, Ventura, CA 93010

**Informant:** Lorraine Johnson - daughter, 29330 W. Dakota Dr., Santa Clarita, CA 91354

**Name of Father:** Norman Carmitchel   PA
**Name of Mother:** Ilah Seidel   PA

**Disposition Date:** 12/31/2005
**Place of Final Disposition:** Conejo Mountain Memorial Park, 2052 Howard Rd., Camarillo, CA 93012
**Type of Disposition:** BU
**Funeral Establishment:** Conejo Mountain Funeral Home   FD 1375

Signature of Embalmer: Bernard M Kirrel   6676

**Place of Death:** St. John's Regional Medical Center
**County:** Ventura
**Facility Address:** 1600 N. Rose Ave.   City: Oxnard

**Cause of Death:**
Immediate Cause: Nephrogenic Fibrosing Dermopathy   Mths
Due to: End Stage Renal Disease   Yrs

**Other Significant Conditions:** Atrial Fibrillation; Anemia; Hypothyroidism

Was Operation Performed: No

**Physician's Certification:**
12/19/2005   12/27/2005   Diane Li, MD, 2200 Gonzales Rd, Oxnard, CA 93036
License Number: A86068   12/30/2005

---



### CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF VENTURA } SS

**DATE ISSUED** 01/06/2006

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Ventura County Public Health Department, and it bears the date of issue in red ink.

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

HEALTH OFFICER
VENTURA COUNTY, CALIFORNIA

* 0 0 0 6 4 3 5 8 2 *



Exh. A
120

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

**ENDORSED**
**FILED**
Superior Court of California
County of San Francisco

**JUN 6 2008**

GORDON PARK-LI, Clerk
BY: _____ DEBORAH STEPPE
                    Deputy Clerk

8          **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                      **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT    │  Case No:
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS    │  CGC-08-476085
    LORRAINE STONDELL, Deceased,
12
                        Plaintiffs,
13
          vs.
14
    BAYER HEALTHCARE                         │  **DECLARATION OF LORRAINE JOHNSON**
15  PHARMACEUTICALS, INC.; BAYER            │  **RE SUCCESSOR-IN-INTEREST**
    HEALTHCARE LLC; BAYER SCHERING          │  **PURSUANT TO §377.11**
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35
20                      Defendants.
21

22          I, the undersigned hereby declare:

23          1.      I, LORRAINE JOHNSON, am over the age of 18 years.

24          2.      The name of the decedent is DORIS LORRAINE STONDELL (hereinafter

25  "Decedent").

26          3.      The Decedent died in Ventura County, California on December 27, 2005.

27

28

- 1 -

DECLARATION OF LORRAINE JOHNSON RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11

Exh. A
121

1        4.     No proceeding is now pending in California for the administration of the Decedent's

2    estate.

3        5.     I am one of the Decedent's successors in interest (as defined in Section 377.11 of the

4    California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding.

5    I am the Decedents' surviving daughter.

6        6.     No other person has a superior right to commence the action or proceeding or to be

7    substituted for the Decedent in the pending action or proceeding.

8        7.     A certified copy of the Decedent's Certificate of Death is attached to the Declaration of

9    Robert Stondell as Exhibit A.

10        I declare under penalty of perjury under the laws of the State of California that the foregoing is

11    true and correct. Executed this 5th day of June 2008 at _____Northridge_____, California.

12

13                                _Lorraine Johnson_

14                                Lorraine Johnson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

DECLARATION OF LORRAINE JOHNSON RE SUCCESSOR-IN-INTEREST PURSUANT TO §377.11

Exh. A
122



**PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:**

# www.sfbar.org/mediation

QUESTIONS?
adr@sfbar.org or 415-982-1600

EXPERIENCED MEDIATORS ARE AVAILABLE IN THE FOLLOWING AREAS

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.





## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee, which pays for the costs of running the program.

## Who Can Use the Service?



The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action has already been filed underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants.

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information



Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.

# WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

Exh. A
124

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California
County of San Francisco**

Exh. A
125

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Exh. A
126

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Exh. A
127

## ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

### JUDICIAL ARBITRATION

*Description*

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

Exh. A
128

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

Exh. A
129

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

ADR-1   10/07 (ja)                                                    Page 6

Exh. A
130

## *Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

## *Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

Exh. A
132

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

**The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:**

☐ Private Mediation    ☐ Mediation Services of BASF    ☐ Judicial Mediation
☐ Binding arbitration    Judge _____
☐ Non-binding judicial arbitration    Judge _____
☐ BASF Early Settlement Program
☐ Other ADR process (describe) _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06                          STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION

Exh. A
134

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:          FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one):  ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE** (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:              Time:              Dept.:        Div.:        Room:

Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in  ☐ complaint  ☐ cross-complaint      *(describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Exh. A
135

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request    ☐ a jury trial    ☐ a nonjury trial    *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial    ☐ by the attorney or party listed in the caption    ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel ☐ has ☐ has not    provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

Exh. A
136

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply)*:

   (1) ☐ Mediation

   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

   (4) ☐ Binding judicial arbitration

   (5) ☐ Binding private arbitration

   (6) ☐ Neutral case evaluation

   (7) ☐ Other *(specify)*:

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

  b. Reservation of rights: ☐ Yes ☐ No

  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

  a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

    ☐ Additional cases are described in Attachment 14a.

  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

Exh. A
137

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

<u>Party</u>                    <u>Description</u>                                        <u>Date</u>

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

Previous case management orders in this case are *(check one)*:     ☐ none     ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▶ _____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]                    **CASE MANAGEMENT STATEMENT**                    Page 4 of 4

Exh. A<br/>138



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

### Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

| | |
|---|---|
| The Honorable David J. Ballati | The Honorable James J. McBride |
| The Honorable Anne Bouliane | The Honorable Kevin M. McCarthy |
| The Honorable Ellen Chaitin | The Honorable John E. Munter |
| The Honorable Robert L. Dondero | The Honorable Ronald Quidachay |
| The Honorable Ernest H. Goldsmith | The Honorable A. James Robertson, II |
| The Honorable Harold E. Kahn | The Honorable John K. Stewart |
| The Honorable Patrick J. Mahoney | The Honorable Mary E. Wiss |
| The Honorable Tomar Mason | |

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

Exh. A
139

1   Lawrence J. Gornick (SBN 136290)
    Debra DeCarli (SBN 237642)
2   Laura Brandenberg (SBN 238642)
    **LEVIN SIMES KAISER & GORNICK LLP**
3   44 Montgomery Street, 36th Floor
    San Francisco, CA 94104
4   Telephone: (415) 646-7160
    Fax: (415) 981-1270
5   lgornick@lskg-law.com
    ddecarli@lskg-law.com
6   lbrandenberg@lskg-law.com

7   Attorneys for Plaintiffs

8        **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                       **COUNTY OF SAN FRANCISCO**

10  LORRAINE ELLEN JOHNSON and ROBERT       | Case No: CGC-08-476085
    GARY STONDELL, individually, and as
11  Successors in Interest to the Estate of DORIS
    LORRAINE STONDELL, Deceased,
12                                          | **DECLARATION FOR ADDITIONAL**
                      Plaintiffs,           | **DISCOVERY**
13       vs.

14  BAYER HEALTHCARE
15  PHARMACEUTICALS, INC.; BAYER
    HEALTHCARE LLC; BAYER SCHERING
16  PHARMA AG; GENERAL ELECTRIC
    COMPANY; GE HEALTHCARE AS; GE
17  HEALTHCARE, INC.; MALLINCKRODT,
    INC.; BRACCO DIAGNOSTICS, INC.;
18  McKESSON CORPORATION; MERRY X-
    RAY CHEMICAL CORP.; and DOES 1
19  through 35

20                    Defendants.
21

22

23       I, Debra DeCarli, declare:

24           1.      I am presently the attorney for Plaintiffs Lorraine Johnson and Robert Stondell,

25  parties to this action.

26           2.      I am propounding to GE HEALTHCARE, INC. the attached Special

27  Interrogatories.

28
                                        1
                    DECLARATION FOR ADDITIONAL DISCOVERY

Exh. A
140

1    3.    This set of Special Interrogatories will cause the total number of specially
2  prepared interrogatories propounded to the party to whom they are directed to exceed the number of
3  specially prepared interrogatories permitted by Section 2030.030 of the Code of Civil Procedure.

4    4.    I have not previously propounded interrogatories to this party other than official
5  form interrogatories.

6    5.    This set of interrogatories contains a total of 56 specially prepared
7  interrogatories.

8    6.    I am familiar with the issues and the previous discovery conducted by all of the
9  parties in this case.

10    7.    I have personally examined each of the questions in this set of interrogatories.

11    8.    This number of questions is warranted under Section 2030.040 of the Code of
12  Civil Procedure because of the complex nature of this case.

13    9.    None of the questions in this set of interrogatories is being propounded for any
14  improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed, or to
15  cause unnecessary delay or needless increase in the cost of litigation.

16    I declare under the penalty of perjury under the laws of the State of California that the
17  foregoing is true and correct.  Executed this 12th day of June 2008 in San Francisco, CA.

18
19
20    _Debra DeCarli_
21    Debra DeCarli, Esq.
22
23
24
25
26
27
28

2
DECLARATION FOR ADDITIONAL DISCOVERY

Exh. A
141

1 | Lawrence J. Gornick (SBN 136290)
2 | Debra DeCarli (SBN 237642)
  | Laura Brandenberg (SBN 238642)
3 | **LEVIN SIMES KAISER & GORNICK LLP**
  | 44 Montgomery Street, 36th Floor
  | San Francisco, CA 94104
4 | Telephone: (415) 646-7160
  | Fax: (415) 981-1270
5 | lgornick@lskg-law.com
  | ddecarli@lskg-law.com
6 | lbrandenberg@lskg-law.com
  | Attorneys for Plaintiffs
7 |
8 | **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**
9 | **COUNTY OF SAN FRANCISCO**

10 | LORRAINE ELLEN JOHNSON and ROBERT    Case No: CGC-08-476085
   | GARY STONDELL, individually, and as
11 | Successors in Interest to the Estate of DORIS
   | LORRAINE STONDELL, Deceased,
12 |
13 |                Plaintiffs,
   |        vs.                               **SPECIAL INTERROGATORIES (SET ONE)**
14 |                                          **TO DEFENDANT GE HEALTHCARE, INC.**
   | BAYER HEALTHCARE
15 | PHARMACEUTICALS, INC.; BAYER
   | HEALTHCARE LLC; BAYER SCHERING
16 | PHARMA AG; GENERAL ELECTRIC
   | COMPANY; GE HEALTHCARE AS; GE
17 | HEALTHCARE, INC.; MALLINCKRODT,
   | INC.; BRACCO DIAGNOSTICS, INC.;
18 | McKESSON CORPORATION; MERRY X-
   | RAY CHEMICAL CORP.; and DOES 1
19 | through 35
20 |
   |                Defendants.
21 |

22 |        PROPOUNDING PARTY:    Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY
23 |                             STONDELL
24 |        RESPONDING PARTY:    Defendant GE HEALTHCARE, INC.
25 |        SET NO.:             ONE
26 |        Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL hereby request,
27 | pursuant to California Code of Civil Procedure section 2030.010 et. seq., that Defendant GE
28 | HEALTHCARE, INC. respond to this First Set of Special Interrogatories. Plaintiffs request that

- 1 -

Exh. A
142

1    Defendant serve its written responses to these Special Interrogatories, at the offices of Levin Simes

2    Kaiser & Gornick, LLP, 44 Montgomery Street, 36th Floor, San Francisco, CA 94104, within thirty

3    (30) days from the date of service of these Requests.

4                              **DEFINITIONS**

5    1.    "DOCUMENTS" includes writings and electronically stored information as described

6    in Cal. Evid. Code §250.

7    2.    "RELATED TO" and "RELATING TO" mean constituting, pertaining to, in

8    connection with, reflecting, respecting, regarding, RELATED TO, referring to, based upon, stating,

9    showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting,

10   embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying,

11   identifying, or in any manger logically, factually, indirectly or directly, or in any other way connecting

12   to the matter addressed in the request, in part or whole.

13   3.    "COMMUNICATIONS" means any matter or method in which information is

14   communicated from one human being to another including (but not limited to) any written, oral, or

15   electronic contact and/or discussion or exchange of information.

16   4.    "PERSON" shall include any individual or entity.

17   5.    "GBCA" shall refer to Gadolinium Based Contrast Agents including: Omniscan,

18   gadodiamide, Gd-DTPA-BMA; OptiMARK, gadoversetamide, Gd-DTPA-BMEA; Magnevist,

19   gadopentetate dimeglumine, Gd-DTPA; MultiHance, gadobenate dimeglumine, Gd-BOPTA;

20   Prohance, gadoteridol, Gd-HP-DO3A.

21   6.    "YOU," "YOUR," or "GE" refers to Defendants General Electric Company, GE

22   Healthcare, Inc. and GE Healthcare AS, and/or its predecessor(s), including all Salutar, Nycomed and

23   Amersham entities, as well as all partners, directors, officers, employees, servants, agents, attorneys,

24   joint ventures, or other representatives, including all corporations and entities affiliated with General

25   Electric Company, GE Healthcare, Inc. and GE Healthcare AS and any other named Defendants in this

26   lawsuit. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as

27   any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other

28   representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign

                                    - 2 -
SPECIAL INTERROGATORIES (SET ONE) TO GE HEALTHCARE, INC.

1  parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors,

2  officers, employees, servants, agents, joint ventures or other representatives.

3       7.     "NSF" shall refer to the disease Nephrogenic Systemic Fibrosis or Nephrogenic

4  Fibrosing Dermopathy.

5       8.     "MRI" shall refer to magnetic resonance imaging.

6       9.     "MRA" shall refer to magnetic resonance angiography or arteriography.

7       10.     "DECEDENT'S HEALTHCARE FACILITIES" shall mean Ventura Coast Imaging

8  Center and Community Memorial Hospital of San Buenaventura.

9       11.     "CUSTODIAL FILE" shall mean DOCUMENTS associated with, authored, received,

10  or maintained by an employee of McKESSON including but not limited to DOCUMENTS maintained

11  in the employee's hard copy files, DOCUMENTS maintained on the employee's (desktop and/or

12  laptop) computer, DOCUMENTS maintained on McKESSON's network, emails (including those

13  existing in ".pst" format) maintained in the employee's McKESSON email account, and the contents

14  of any e-rooms or other areas on the McKESSON computer network owned, managed, maintained by,

15  or associated with the employee.

16       12.     "DECEDENT" shall refer to Doris L. Stondell.

17  **SPECIAL INTERROGATORIES**

18  **SPECIAL INTERROGATORY NO. 1:**

19       Please IDENTIFY, by date, brand name, manufacturer, purchase order or invoice number and

20  lot number all sales or deliveries of GBCAs to DECEDENT'S HEALTHCARE FACILITIES.

21  **SPECIAL INTERROGATORY NO. 2:**

22       Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

23  FACILITIES RELATED TO GBCAs.

24  **SPECIAL INTERROGATORY NO. 3:**

25       Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

26  FACILITIES RELATED TO NSF.

27

28

**SPECIAL INTERROGATORY NO. 4:**

Please IDENTIFY all PERSONS at DECEDENT'S HEALTHCARE FACILITIES with whom YOU COMMUNICATED RELATED TO GBCAs.

**SPECIAL INTERRGATORY NO. 5:**

Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 6:**

Please IDENTIFY all PERSONS at DECEDENT'S HEALTHCARE FACILITIES with whom YOU COMMUNICATED RELATED TO NSF.

**SPECIAL INTERRGATORY NO. 7:**

Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with DECEDENT'S HEALTHCARE FACILITIES RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 8:**

Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 9:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 10:**

Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with DECEDENT'S HEALTHCARE FACILITIES RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 11:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

- 4 -

SPECIAL INTERROGATORIES (SET ONE) TO GE HEALTHCARE, INC.

Exh. A
145

1  **SPECIAL INTERROGATORY NO. 12:**

2      Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to

3  DECEDENT'S HEALTHCARE FACILITIES.

4  **SPECIAL INTERROGATORY NO. 13:**

5      Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to

6  DECEDENT'S HEALTHCARE FACILITIES.

7  **SPECIAL INTERROGATORY NO. 14:**

8      Please IDENTIFY any of YOUR sales personnel who have ever visited DECEDENT'S

9  HEALTHCARE FACILITIES RELATED TO GBCAs.

10  **SPECIAL INTERROGATORY NO. 15:**

11      Please IDENTIFY all DOCUMENTS RELATED TO any visits by YOUR sales personnel to

12  DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAs.

13  **SPECIAL INTERROGATORY NO. 16:**

14      Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

15  FACILITIES RELATED TO the safety or efficacy of GBCAs for MRIs.

16  **SPECIAL INTERROGATORY NO. 17:**

17      Please IDENTIFY all COMMUNICATIONS with DECEDENT'S HEALTHCARE

18  FACILITIES RELATED TO the safety or efficacy of GBCAs for MRAs.

19  **SPECIAL INTERROGATORY NO. 18:**

20      Please identify all warnings RELATED TO GBCAs YOU provided to DECEDENT'S

21  HEALTHCARE FACILITIES.

22  **SPECIAL INTERROGATORY NO. 19:**

23      Please identify all warnings RELATED TO NSF YOU provided to DECEDENT'S

24  HEALTHCARE FACILITIES.

25  **SPECIAL INTERROGATORY NO. 20:**

26      Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO

27  GBCAs.

28

SPECIAL INTERROGATORIES (SET ONE) TO GE HEALTHCARE, INC.

Exh. A
146

1  **SPECIAL INTERROGATORY NO. 21:**

2      Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO

3  NSF.

4  **SPECIAL INTERROGATORY NO. 22:**

5      Please IDENTIFY all PERSONS at McKesson Corporation with whom YOU

6  COMMUNICATED RELATED TO GBCAs.

7  **SPECIAL INTERRGATORY NO. 23:**

8      Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with McKesson

9  Corporation RELATED TO GBCAs.

10  **SPECIAL INTERROGATORY NO. 24:**

11      Please IDENTIFY all PERSONS at McKesson Corporation with whom YOU

12  COMMUNICATED RELATED TO NSF.

13  **SPECIAL INTERRGATORY NO. 25:**

14      Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with McKesson

15  Corporation RELATED TO NSF.

16  **SPECIAL INTERROGATORY NO. 26:**

17      Please IDENTIFY, by name, current job title or position and job title or position at time of

18  communication all PERSONS employed by YOU who communicated with McKesson Corporation

19  RELATED TO GBCAs.

20  **SPECIAL INTERROGATORY NO. 27:**

21      For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is

22  no longer employed by YOU, please provide last known address and telephone number.

23  **SPECIAL INTERROGATORY NO. 28:**

24      Please IDENTIFY, by name, current job title or position and job title or position at time of

25  communication all PERSONS employed by YOU who communicated with McKesson Corporation

26  RELATED TO NSF.

27

28

Exh. A
147

**SPECIAL INTERROGATORY NO. 29:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 30:**

Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 31:**

Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 32:**

Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO the safety or efficacy of GBCAs for MRIs.

**SPECIAL INTERROGATORY NO. 33:**

Please IDENTIFY all COMMUNICATIONS with McKesson Corporation RELATED TO the safety or efficacy of GBCAs for MRAs.

**SPECIAL INTERROGATORY NO. 34:**

Please identify all warnings RELATED TO GBCAs YOU provided to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 35:**

Please identify all warnings RELATED TO NSF YOU provided to McKesson Corporation.

**SPECIAL INTERROGATORY NO. 36:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 37:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 38:**

Please IDENTIFY all PERSONS at Merry X-Ray Chemical Corporation with whom YOU COMMUNICATED RELATED TO GBCAs.

- 7 -

Exh. A
148

**SPECIAL INTERRGATORY NO. 39:**

Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 40:**

Please IDENTIFY all PERSONS at Merry X-Ray Chemical Corporation with whom YOU COMMUNICATED RELATED TO NSF.

**SPECIAL INTERRGATORY NO. 41:**

Please IDENTIFY all DOCUMENTS RELATED TO COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 42:**

Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with Merry X-Ray Chemical Corporation RELATED TO GBCAs.

**SPECIAL INTERROGATORY NO. 43:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 44:**

Please IDENTIFY, by name, current job title or position and job title or position at time of communication all PERSONS employed by YOU who communicated with Merry X-Ray Chemical Corporation RELATED TO NSF.

**SPECIAL INTERROGATORY NO. 45:**

For each PERSON IDENTIFIED in response to the immediately previous Interrogatory who is no longer employed by YOU, please provide last known address and telephone number.

**SPECIAL INTERROGATORY NO. 46:**

Please IDENTIFY all marketing materials RELATED TO GBCAs provided by YOU to Merry X-Ray Chemical Corporation.

SPECIAL INTERROGATORIES (SET ONE) TO GE HEALTHCARE, INC.

Exh. A
149

**SPECIAL INTERROGATORY NO. 47:**

Please IDENTIFY all marketing materials RELATED TO NSF provided by YOU to Merry X-Ray Chemical Corporation.

**SPECIAL INTERROGATORY NO. 48:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO the safety or efficacy of GBCAs for MRIs.

**SPECIAL INTERROGATORY NO. 49:**

Please IDENTIFY all COMMUNICATIONS with Merry X-Ray Chemical Corporation RELATED TO the safety or efficacy of GBCAs for MRAs.

**SPECIAL INTERROGATORY NO. 50:**

Please identify all warnings RELATED TO GBCAs YOU provided to Merry X-Ray Chemical Corporation.

**SPECIAL INTERROGATORY NO. 51:**

Please identify all warnings RELATED TO NSF YOU provided to Merry X-Ray Chemical Corporation.

**SPECIAL INTERROGATORY NO. 52:**

Please IDENTIFY, by name of the database, the subject matter of the database, the location of the database, and the type of platform required to access the database information, all databases related to GBCAs. The types of databases requested include but are not limited to databases concerning clinical trials; adverse events; sales, including but not limited to detail call logs; sales tracking; marketing; regulatory; scientific literature; Professional Information Requests (PIRs); Safety; and Compliance.

**SPECIAL INTERROGATORY NO. 53:**

Please IDENTIFY all e-rooms or other online or network locations for shared collaborations that contain information related to GBCAs.

**SPECIAL INTERROGATORY NO. 54:**

Please IDENTIFY all e-rooms or other online or network locations for shared collaborations that contain information related to NSF.

- 9 -

Exh. A
150

1  **SPECIAL INTERROGATORY NO. 55:**

2      Please IDENTIFY YOUR policies related to retention, storage, back-up, deletion or destruction

3  of DOCUMENTS and data.

4  **SPECIAL INTERROGATORY  NO. 56:**

5      Please IDENTIFY, by name, address, relationship to YOU, and to which interrogatory, all

6  PERSONS who provided information responsive to these interrogatories.

7

8

9  Dated:  June 12, 2008                       LEVIN SIMES KAISER & GORNICK LLP

10

11                               By: _____

12                                  Debra DeCarli, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -
SPECIAL INTERROGATORIES (SET ONE) TO GE HEALTHCARE, INC.

1  Lawrence J. Gornick (SBN 136290)
   Debra DeCarli (SBN 237642)
2  Laura Brandenberg (SBN 238642)
   **LEVIN SIMES KAISER & GORNICK LLP**
3  44 Montgomery Street, 36th Floor
   San Francisco, CA 94104
4  Telephone: (415) 646-7160
   Fax: (415) 981-1270
5  lgornick@lskg-law.com
   ddecarli@lskg-law.com
6  lbrandenberg@lskg-law.com
   Attorneys for Plaintiffs
7

8         **SUPERIOR COURT OF CALIFORNIA, UNLIMITED JURISDICTION**

9                   **COUNTY OF SAN FRANCISCO**

10 | LORRAINE ELLEN JOHNSON and ROBERT    Case No: CGC-08-476085
   | GARY STONDELL, individually, and as
11 | Successors in Interest to the Estate of DORIS
   | LORRAINE STONDELL, Deceased,
12 |
   |                Plaintiffs,           **REQUEST FOR PRODUCTION OF**
13 |        vs.                           **DOCUMENTS (SET ONE) TO DEFENDANT**
   |                                      **GE HEALTHCARE, INC.**
14 | BAYER HEALTHCARE
15 | PHARMACEUTICALS, INC.; BAYER
   | HEALTHCARE LLC; BAYER SCHERING
16 | PHARMA AG; GENERAL ELECTRIC
   | COMPANY; GE HEALTHCARE AS; GE
17 | HEALTHCARE, INC.; MALLINCKRODT,
   | INC.; BRACCO DIAGNOSTICS, INC.;
18 | McKESSON CORPORATION; MERRY X-
   | RAY CHEMICAL CORP.; and DOES 1
19 | through 35
20 |
   |                Defendants.
21

22     PROPOUNDING PARTY:   Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY
                            STONDELL
23
       RESPONDING PARTY:    Defendant GE HEALTHCARE, INC.
24
       SET NO.:             ONE
25
       Plaintiffs LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL hereby request,
26
   pursuant to California Code of Civil Procedure section 2031.010 et. seq., that Defendant GE
27
   HEALTHCARE, INC. respond to this First Set of Requests for Production of DOCUMENTS.
28

                                         1
   REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

1  Plaintiffs request that Defendant serve its written responses to these requests, and produce all

2  responsive DOCUMENTS and things, at the offices of Levin Simes Kaiser & Gornick, LLP, 44

3  Montgomery Street, 36th Floor, San Francisco, CA 94104, within thirty (30) days from the date of

4  service of these Requests.

5  **INSTRUCTIONS**

6          In responding to this First Request for Production, YOU are required to produce all

7  DOCUMENTS in YOUR possession, custody, or control, including DOCUMENTS which are

8  reasonably available to YOU, or in the possession, custody, or control of YOUR agents, consignees,

9  representatives, or investigators, or YOUR attorneys or their agents, employees, representatives, or

10 investigators.

11         If any of the DOCUMENTS or information requested cannot be produced in full, YOU are

12 required to specify, to the extent possible, the reasons for YOUR inability to produce the remainder,

13 and the approximate date when YOU expect to produce such DOCUMENTS, if at all.

14     If any request is deemed to call for the production of privileged or otherwise protected information

15 or materials, YOU must provide the following information in a written response, designating and

16 identifying those DOCUMENTS or information withheld from production on grounds of privilege:

17     (a)    The reason for withholding the DOCUMENT or information;

18     (b)    A statement of the legal basis for the claim of privilege, work product, or other ground for

19             non-disclosure;

20     (c)    A brief description of the DOCUMENT, including:

21             a.  The date of the DOCUMENT;

22             b.  The number of pages, attachments, and appendices;

23             c.  The name(s) of its author(s) or preparer(s) and identification by employment and title of

24                 each such PERSON;

25             d.  The name of each PERSON who was sent, shown, or copied on the DOCUMENT, or

26                 has had access to or custody of the DOCUMENT, together with an identification of

27                 each such PERSON;

28

2

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

      e.   The present custodian; and,

      f.    The subject matter of the DOCUMENT, and in the case of any DOCUMENT relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

With respect to each DOCUMENT requested which has been lost, destroyed, or otherwise disposed of since its preparation or receipt, YOU shall provide the following information separately as to each such DOCUMENT:

   (a)   A general description of the subject matter, author, recipient(s), date;

   (b)   The identity of each PERSON who has received a copy or had an opportunity to receive a copy thereof;

   (c)   The last custodian of the DOCUMENT or copies thereof;

   (d)   The full particulars or circumstances whereby the DOCUMENT was disposed of, destroyed, or otherwise lost;

   (e)   Copies of any DOCUMENT destruction instructions or directives; and,

   (f)   Copies of any DOCUMENT destruction acknowledgement forms or receipts for the destruction of DOCUMENTS.

All DOCUMENTS produced in response to these requests shall be either:

   (a)   Organized and labeled to correspond with the number of the specific request to which the DOCUMENTS are responsive, or

   (b)   Produced in the order and in the manner that they are kept in the usual course of business.

All DOCUMENTS that exist in electronic form are to be produced in their native format.

## DEFINITIONS

1.   "DOCUMENTS" includes writings and electronically stored information as described in Cal. Evid. Code §250.

2.   "RELATED TO" and "RELATING TO" mean constituting, pertaining to, in connection with, reflecting, respecting, regarding, RELATED TO, referring to, based upon, stating,

3

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

Exh. A
154

1  showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting,

2  embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying,

3  identifying, or in any manger logically, factually, indirectly or directly, or in any other way connecting

4  to the matter addressed in the request, in part or whole.

5        3.    "COMMUNICATIONS" means any matter or method in which information is

6  communicated from one human being to another including (but not limited to) any written, oral, or

7  electronic contact and/or discussion or exchange of information.

8        4.    "PERSON" shall include any individual or entity.

9        5.    "OMNISCAN" means the Gadolinium Based Contrast Agent marketed in the United

10  States as Omniscan, including all predecessor compounds that were investigated as part of the

11  development of Omniscan.  The term Omniscan also includes the same chemical product even if it was

12  marketed in a different company under a different name.  It also includes all constituent chemical

13  entities that constitute Omniscan, including Gadodiamide (Gd-DPTA-BMA) and any chelate that was

14  added to or combined with gadodiamide to make what is marketed as Omniscan.

15        6.    "GBCA" shall refer to Gadolinium Based Contrast Agents including: Omniscan,

16  gadodiamide, Gd-DTPA-BMA; OptiMARK, gadoversetamide, Gd-DTPA-BMEA; Magnevist,

17  gadopentetate dimeglumine, Gd-DTPA; MultiHance, gadobenate dimeglumine, Gd-BOPTA;

18  Prohance, gadoteridol, Gd-HP-DO3A.

19        7.    "YOU," "YOUR," "YOURS" refers to Defendants General Electric Company, GE

20  Healthcare, Inc. and GE Healthcare AS, and/or its predecessor(s), including all Salutar, Nycomed and

21  Amersham entities, as well as all partners, directors, officers, employees, servants, agents, attorneys,

22  joint ventures, or other representatives, including all corporations and entities affiliated with General

23  Electric Company, GE Healthcare, Inc. and GE Healthcare AS and any other named Defendants in this

24  lawsuit. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as

25  any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or other

26  representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign

27  parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors,

28  officers, employees, servants, agents, joint ventures or other representatives.

4

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

8.    "GE" refers to each of the Defendants GENERAL ELECTRIC COMPANY and GE HEALTHCARE, INC., and GE HEALTHCARE AS, as well as all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with GENERAL ELECTRIC.  The terms shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures, or other representatives, including AMERSHAM HEALTH INC. and all other relevant AMERSHAM, NYCOMED and SALUTAR entities.  The terms shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures, or other representatives.

9.    "NSF" shall refer to the disease Nephrogenic Systemic Fibrosis or Nephrogenic Fibrosing Dermopathy.

10.    "MRI" shall refer to magnetic resonance imaging.

11.    "MRA" shall refer to magnetic resonance angiography or arteriography.

12.    "DECEDENT'S HEALTHCARE FACILITIES" shall mean Ventura Coast Imaging Center and Community Memorial Hospital of San Buenaventura.

13.    "McKESSON" refers to McKESSON CORPORATION, as well as all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, predecessors or other representatives.

14.    "MERRY X-RAY" refers to MERRY X-RAY CHEMICAL CORPORATION, as well as all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, predecessors or other representatives.

15.    "CUSTODIAL FILE" shall mean DOCUMENTS associated with, authored, received, or maintained by an employee of YOURS including but not limited to DOCUMENTS maintained in the employee's hard copy files, DOCUMENTS maintained on the employee's (desktop and/or laptop) computer, DOCUMENTS maintained on YOUR network, emails (including those existing in ".pst" format) maintained in the employee's GE email account, and the contents of any e-rooms or other areas on YOUR computer network owned, managed, maintained by, or associated with the employee.

5

16.    "DECEDENT" shall refer to Doris L. Stondell.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and McKESSON RELATED TO DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and MERRY X-RAY RELATED TO DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS RELATED TO COMMUNICATIONS between YOU and DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and McKESSON RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and MERRY X-RAY RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATED TO contracts or purchasing agreements between YOU and DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATED TO exclusive supply agreements between YOU and McKESSON RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATED TO exclusive supply agreements between YOU and MERRY X-RAY RELATED TO GBCAS.

6

Exh. A
157

1    **REQUEST FOR PRODUCTION NO. 9:**

2      All DOCUMENTS RELATED TO exclusive supply agreements between YOU and

3    DECEDENT'S HEALTHCARE FACILITIES RELATED TO GBCAS.

4    **REQUEST FOR PRODUCTION NO. 10:**

5      All DOCUMENTS RELATED TO marketing agreements with McKESSON related to

6    GBCAS.

7    **REQUEST FOR PRODUCTION NO. 11:**

8      All DOCUMENTS RELATED TO marketing agreements with MERRY X-RAY related to

9    GBCAS.

10    **REQUEST FOR PRODUCTION NO. 12:**

11      All DOCUMENTS RELATED TO marketing of GBCAS to DECEDENT'S HEALTHCARE

12    FACILITIES.

13    **REQUEST FOR PRODUCTION NO. 13:**

14      All DOCUMENTS RELATED TO distribution agreements with McKESSON RELATED TO

15    GBCAS.

16    **REQUEST FOR PRODUCTION NO. 14:**

17      All DOCUMENTS RELATED TO distribution agreements with MERRY X-RAY RELATED

18    TO GBCAS.

19    **REQUEST FOR PRODUCTION NO. 15:**

20      All DOCUMENTS RELATED TO distribution agreements with DECEDENT'S

21    HEALTHCARE FACILITIES RELATED TO GBCAS.

22    **REQUEST FOR PRODUCTION NO. 16:**

23      All DOCUMENTS RELATED TO sales of GBCAS by YOU to DECEDENT'S

24    HEALTHCARE FACILITIES.

25    **REQUEST FOR PRODUCTION NO. 17:**

26      All DOCUMENTS RELATED TO all services YOU performed for DECEDENT'S

27    HEALTHCARE FACILITIES RELATED TO GBCAS.

28

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

Exh. A
158

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS RELATED TO all services McKESSON performed for YOU RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS RELATED TO all services MERRY X-RAY performed for YOU RELATED TO GBCAS.

**REQUEST FOR PRODUCTION NO. 20:**

All packaging, including but not limited to labels and package inserts, RELATED TO YOUR packaging or re-packaging of GBCAS for sale or distribution to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS and drafts of DOCUMENTS RELATED TO YOUR packaging or re-packaging of GBCAS for sale or distribution to DECEDENT'S HEALTHCARE FACILITIES, including but not limited to labels and package inserts, and including the reasons for any changes to the packaging or labeling.

**REQUEST FOR PRODUCTION NO. 22:**

All call logs for YOUR GBCA sales personnel who have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 23:**

The CUSTODIAL FILE for each of YOUR GBCA sales personnel who have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS RELATED TO the recording or tracking of GBCA related sales calls to DECEDENT'S HEALTHCARE FACILITIES.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS RELATED TO the provision of GBCAS samples to any of DECEDENT'S HEALTHCARE FACILITIES.

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

Exh. A
159

1  **REQUEST FOR PRODUCTION NO. 26:**

2      All DOCUMENTS RELATED TO the use of GBCAS by any of DECEDENT'S

3  HEALTHCARE FACILITIES.

4  **REQUEST FOR PRODUCTION NO. 27:**

5      All "Dear Doctor" or "Dear Healthcare Provider" letters RELATED TO GBCAS sent to any of

6  DECEDENT'S HEALTHCARE FACILITIES and all DOCUMENTS RELATED TO such letters.

7  **REQUEST FOR PRODUCTION NO. 28:**

8      All advertisements and promotional materials RELATED TO GBCAS and all related

9  DOCUMENTS provided to DECEDENT'S HEALTHCARE FACILITIES.

10  **REQUEST FOR PRODUCTION NO. 29:**

11      All newsletters generated by or distributed to YOUR GBCA sales personnel who have ever

12  visited any of DECEDENT'S HEALTHCARE FACILITIES.

13  **REQUEST FOR PRODUCTION NO. 30:**

14      If YOU contend that DECEDENT or DECEDENT'S HEALTHCARE FACILITIES were

15  aware or should have been aware of any hazards associated with use of GBCAS, PRODUCE all

16  DOCUMENTS that support YOUR contention.

17  **REQUEST FOR PRODUCTION NO. 31:**

18      All DOCUMENTS RELATED TO the safety or efficacy of GBCAS, including OMNISCAN, for

19  MRIs which YOU provided to DECEDENT'S HEALTHCARE PROVIDERS.

20  **REQUEST FOR PRODUCTION NO. 32:**

21      All DOCUMENTS RELATED TO the safety or efficacy of GBCAS, including OMNISCAN, for

22  MRAs which YOU provided to DECEDENT'S HEALTHCARE PROVIDERS.

23  **REQUEST FOR PRODUCTION NO. 33:**

24      All DOCUMENTS regarding GBCAS, including OMNISCAN, that YOU provided to

25  DECEDENT'S HEALTHCARE FACILITIES.

26  **REQUEST FOR PRODUCTION NO. 34:**

27      All DOCUMENTS RELATED TO NSF that YOU provided to DECEDENT'S

28  HEALTHCARE FACILITIES.

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

1 | **REQUEST FOR PRODUCTION NO. 35:**

2 | All DOCUMENTS RELATED TO training provided to YOUR GBCA sales personnel who

3 | have ever visited any of DECEDENT'S HEALTHCARE FACILITIES.

4 | **REQUEST FOR PRODUCTION NO. 36:**

5 | All DOCUMENTS RELATED TO the analysis of GBCA use by DECEDENT'S

6 | HEALTHCARE FACILITIES.

7 | **REQUEST FOR PRODUCTION NO. 37:**

8 | All DOCUMENTS RELATED TO the means, manner, and mode of distribution of GBCAS to

9 | DECEDENT'S HEALTHCARE PROVIDERS.

10 | **REQUEST FOR PRODUCTION NO. 38:**

11 | All DOCUMENTS that reflect annual sales figures of GBCAS, including OMNISCAN, to

12 | DECEDENT'S HEALTHCARE FACILITIES.

13 | **REQUEST FOR PRODUCTION NO. 39:**

14 | All responses to requests from physicians associated with DECEDENT'S HEALTHCARE

15 | FACILITIES for information RELATED TO GBCAS, including OMNISCAN.

16 | **REQUEST FOR PRODUCTION NO. 40:**

17 | All responses to requests from physicians associated with DECEDENT'S HEALTHCARE

18 | FACILITIES for information RELATED TO NSF.

19 | **REQUEST FOR PRODUCTION NO. 41:**

20 | All DOCUMENTS RELATED TO YOUR funding or sponsorship of education programs

21 | RELATED TO healthcare providers RELATED TO DECEDENT'S HEALTHCARE FACILITIES.

22 | **REQUEST FOR PRODUCTION NO. 42:**

23 | All DOCUMENTS RELATED TO marketing MR systems for use with GBCAs, including

24 | OMNISCAN, to DECEDENT'S HEALTHCARE FACILITIES.

25 | **REQUEST FOR PRODUCTION NO. 43:**

26 | All DOCUMENTS RELATED TO past, current or future purchase of MR systems for use with

27 | GBCAs, including OMNISCAN, to DECEDENT'S HEALTHCARE FACILITIES.

28 |

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

Exh. A
161

1    **REQUEST FOR PRODUCTION NO. 44:**

2        An organizational chart or other DOCUMENT showing YOUR corporate organization

3    RELATED TO distribution, delivery and sales of GBCAS to DECEDENT'S HEALTHCARE

4    FACILITIES.

5

6    Dated:  June 12, 2008                    LEVIN SIMES KAISER & GORNICK LLP

7

8                                    By:  _Debra DeCarli_____

9                                         Debra DeCarli, Esq.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO DEFENDANT GE HEALTHCARE, INC.

Exh. A
162

DISC-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Lawrence J. Gornick (SBN 136290)<br>Debra DeCarli (SBN 237642)<br>Levin Simes Kaiser & Gornick<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>TELEPHONE NO. (415)646-7160<br>FAX NO. *(Optional)* (415) 981-1270<br>E MAIL ADDRESS *(Optional)* lgornick@lskg-law.com; ddecarli@lskg-law.<br>ATTORNEY FOR *(Name)* Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
Superior Court

SHORT TITLE OF CASE: Stondell v Bayer Healthcare Pharmaceuticals, Inc., et al

| | |
|---|---|
| **FORM INTERROGATORIES—GENERAL**<br>**Asking Party:** LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL<br>**Answering Party:** GE HEALTHCARE, INC.<br>**Set No.:** ONE | CASE NUMBER:<br>CGC-08-476085 |

**Sec. 1.    Instructions to All Parties**

(a)   Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)   For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c)   These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2.    Instructions to the Asking Party**

(a)   These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, *Form Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)   Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)   You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)   The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)   Additional interrogatories may be attached.

**Sec. 3.    Instructions to the Answering Party**

(a)   An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)   As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)   Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)   If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)   Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)   Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)   If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)   Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____        _____
      *(DATE)*                        *(SIGNATURE)*

**Sec. 4.    Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☐   (1)   **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

**FORM INTERROGATORIES—GENERAL**    Legal Solutions Plus

Exh. A
163

`X`   (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0   Identity of Persons Answering These Interrogatories
2.0   General Background Information—Individual
3.0   General Background Information—Business Entity
4.0   Insurance
5.0   *[Reserved]*
6.0   Physical, Mental, or Emotional Injuries
7.0   Property Damage
8.0   Loss of Income or Earning Capacity
9.0   Other Damages
10.0  Medical History
11.0  Other Claims and Previous Claims
12.0  Investigation — General
13.0  Investigation — Surveillance
14.0  Statutory or Regulatory Violations
15.0  Denials and Special or Affirmative Defenses
16.0  Defendant's Contentions Personal Injury
17.0  Responses to Request for Admissions
18.0  *[Reserved]*
19.0  *[Reserved]*
20.0  How the Incident Occurred—Motor Vehicle
25.0  *[Reserved]*
30.0  *[Reserved]*
40.0  *[Reserved]*
50.0  Contract
60.0  *[Reserved]*
70.0  Unlawful Detainer *[See separate form FI-128]*
101.0 Economic Litigation *[See separate form FI-129]*
200.0 Employment Law *[See separate form FI-130]*
      Family Law *[See separate form 1292.10]*

**DISC-001**

**1.0  Identity of Persons Answering These Interrogatories**

`X`  1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0  General Background Information—individual**

`  ` 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

`  ` 2.2 State the date and place of your birth.

`  ` 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

`  ` 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

`  ` 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

`  ` 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

`  ` 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

`  ` 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

`  ` 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

`  ` 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

Exh. A
164

DISC-001

2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON**? If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON**; and
(b) a description of your duties.

2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT**? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT**.

2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information — Business Entity**

[X] 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

[X] 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

[X] 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

[X] 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

[X] 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

[X] 4.1 At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS**, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

[X] 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

Exh. A
165

DISC-001

6.3 Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS**, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS**, and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT**? If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER**;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

## 7.0 Property Damage

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT**? If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS**, and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS**, and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS**, and telephone number of the **PERSON** who paid for the repair.

## 8.0 Loss of Income or Earning Capacity

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT**? (*If your answer is "no," do not answer interrogatories 8.2 through 8.8*).

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT**.

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT**.

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT**? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

Exh. A
166

DISC-001

**9.0 Other Damages**

9.1    Are there any other damages that you attribute to the **INCIDENT**? If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** to whom an obligation was incurred.

9.2    Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**10.0 Medical History**

10.1    At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT**? If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

10.2    List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT**. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

10.3    At any time after the **INCIDENT**, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS**, and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

11.1    Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS**, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

11.2    In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS**, and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS**, and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

[X]  12.1    State the name, **ADDRESS**, and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT**;
(b) who made any statement at the scene of the **INCIDENT**;
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

[X]  12.2    Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT**? If so, for each individual state:
(a) the name, **ADDRESS**, and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who conducted the interview.

[X]  12.3    Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT**? If so, for each statement state:
(a) the name, **ADDRESS**, and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS**, and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original statement or a copy.

**FORM INTERROGATORIES—GENERAL**

Exh. A
167

DISC-001

12.4  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:
(a)  the number of photographs or feet of film or videotape;
(b)  the places, objects, or persons photographed, filmed, or videotaped;
(c)  the date the photographs, films, or videotapes were taken;
(d)  the name, **ADDRESS**, and telephone number of the individual taking the photographs, films, or videotapes; and
(e)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

12.5  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) concerning the **INCIDENT**?  If so, for each item state:
(a)  the type (i.e., diagram, reproduction, or model);
(b)  the subject matter; and
(c)  the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

[X] 12.6  Was a report made by any **PERSON** concerning the **INCIDENT**?  If so, state:
(a)  the name, title, identification number, and employer of the **PERSON** who made the report;
(b)  the date and type of report made;
(c)  the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

12.7  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**?  If so, for each inspection state:
(a)  the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b)  the date of the inspection.

### 13.0  Investigation—Surveillance

[X] 13.1  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action?  If so, for each surveillance state:
(a)  the name, **ADDRESS**, and telephone number of the individual or party;
(b)  the time, date, and place of the surveillance;
(c)  the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

[X] 13.2  Has a written report been prepared on the surveillance? If so, for each written report state:
(a)  the title;
(b)  the date;
(c)  the name, **ADDRESS**, and telephone number of the individual who prepared the report; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

### 14.0  Statutory or Regulatory Violations

14.1  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**?  If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

14.2  Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:
(a)  the name, **ADDRESS**, and telephone number of the **PERSON**;
(b)  the statute, ordinance, or regulation allegedly violated;
(c)  whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d)  the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

### 15.0  Denials and Special or Affirmative Defenses

[X] 15.1  Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:
(a)  state all facts upon which you base the denial or special or affirmative defense;
(b)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

### 16.0  Defendant's Contentions—Personal Injury

16.1  Do you contend that any **PERSON**, other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff?  If so, for each **PERSON**:
(a)  state the name, **ADDRESS**, and telephone number of the **PERSON**;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.2  Do you contend that plaintiff was not injured in the **INCIDENT**? If so:
(a)  state all facts upon which you base your contention;
(b)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

Exh. A
168

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**? If so:
(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:
(a) the source of each **DOCUMENT**;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

16.10  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:
(a) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER**;
(b) a description of each **DOCUMENT**; and
(c) the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**17.0  Responses to Request for Admissions**

17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0**  *[Reserved]*

**19.0**  *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT**, state:
(a) the year, make, model, and license number;
(b) the name, **ADDRESS**, and telephone number of the driver;

**FORM INTERROGATORIES—GENERAL**

Exh. A
169

DISC-001

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

**20.3** State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

**20.4** Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

**20.5** State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

**20.6** Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

**20.7** Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT**.

**20.8** State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT**;

(b) at the time of the **INCIDENT**; and

(c) just after the **INCIDENT**.

**20.9** Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

**20.10** Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

**20.11** State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

**50.1** For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

**50.2** Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

**50.3** Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

**50.4** Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

**50.5** Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

**50.6** Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

Exh. A
170

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|

Lawrence J. Gornick (SBN 136290)
Debra DeCarli (SBN 237642)
Levin Simes Kaiser & Gornick
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
TELEPHONE NO. (415) 646-7160    FAX NO. (415) 981-1270
ATTORNEY FOR *(Name)*  Plaintiffs

**ENDORSED**
**F I L E D**
Superior Court of California
County of San Francisco

JUN 0 6 2008

**GORDON PARK-LI, Clerk**
BY: _____ DEBORAH STEPPE
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS 400 McAllister Street
MAILING ADDRESS
CITY AND ZIP CODE San Francisco, CA 94102
BRANCH NAME

CASE NAME: Stondell v Bayer Healthcare
Pharmaceuticals, Inc., et al

CASE NUMBER: **CGC-08-476085**

| CIVIL CASE COVER SHEET | | Complex Case Designation | |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE DEPT. |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [ ] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: EIGHT
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: 6/5/08

Lawrence J. Gornick (SBN 136290)
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal Solutions & Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 |

Exh. A
171

CASE NUMBER: CGC-08-476085 LORRAINE ELLEN JOHNSON et al VS. BAYER HEALTHCA

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

| | |
|---|---|
| **DATE:** | **NOV-07-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

Exh. A
172

Arrow

FROM: Wendy Mayorga (213)337-4615
CT - Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO: **Deb Missell (609)514-6467**
**GE Healthcare Inc.**
**101 Carnegie Center**

**Princeton, NJ 08540**
Ref: SOP/0413900/513534483/Wendy Mayorga



FedEx Revenue Barcode

CAD# 8318649
SHIP DATE: 16JUN08
WEIGHT: 1 LB



DELIVERY ADDRESS (FedEx-EDR)

** 2DAY **

**WED**
**A2**
Deliver by
**18JUN08**

**TRK #  7910 8772 7516**      FORM
0201                                            **EWR**

**08540**   -NJ-US

## SB PRIA



CLS063008

**Exh. A**
**173**

# CIVIL COVER SHEET

‰ JS 44 (Rev 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
LORRAINE ELLEN JOHNSON and ROBERT GARY STONDELL, et al.

## DEFENDANTS
GE HEATHCARE INC. and GENERAL ELECTRIC COMPANY

(Bayer Healthcare Pharmaceuticals, Inc. is the first named defendant)

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

California

County of Residence of First Listed Defendant  Delaware & New Jersey
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Stephanie A. Hingle, SBN: 199396
KUTAK ROCK LLP
515 South Figueroa Street, Suite 1240
Los Angeles, CA 90071
213-312-4000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1441 (b) and 28 U.S.C. Section 1332
Brief description of cause:
Pharmaceutical product liability claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23       DEMAND $           CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)       ☒ SAN FRANCISCO/OAKLAND       ☐ SAN JOSE

DATE
July 16, 2008

SIGNATURE OF ATTORNEY OF RECORD   Stephanie A. Hingle

NDC-JS44